## Richmond.

### SMOOT AND OTHERS V. BIBB AND OTHERS.

#### November 14, 1918.

#### Absent, Whittle, P.

1. REMAINDERS, REVERSIONS AND EXECUTORY INTERESTS—*Vested or Contingent Remainders.*—A remainder is vested when it is subject to no condition precedent and is always ready during its continuance to come into the possession of a certain person already existing and ascertained on the determination of the particular estate now or hereafter, in any manner whatsoever. And any remainder not so ready is contingent.

2. REMAINDERS, REVERSIONS AND EXECUTORY INTERESTS—*Vested or Contingent Remainders.*—It will be observed that the definition in the preceding syllabus requires that the remainderman, at the time the question arises, should *already* be in existence and ascertained; and it is not enough, in order to consider the remainder *now* vested, that he will become ascertained at the moment the particular estate ends and the possession becomes vacant. Thus there are cases where the same event that ends the particular estate ascertains the remainderman; and whenever the possession becomes vacant there will *then* be a certain person ready to take possession; as in the limitation, to A for the life of B, remainder to the heirs of B, or to A and B for life, remainder to the survivor and his heirs. Here the remainder will vest and come into possession *eo instanti* on the death of B in the one case, or the survivorship of A or B in the other; but meanwhile it remains contingent, because, as yet, there is no "determinate person" in whom "the estate is invariably fixed;" for *nemo est haeres viventis,* and who can now tell whether A or B will be the survivor?

3. REMAINDERS, REVERSIONS AND EXECUTORY INTERESTS—*Vested or Contingent Remainders—Case at Bar.*—A grantor by deed conveyed a large tract of land to his son, in trust for the use and benefit of the son and his family during the life of the son, and at the death of the son "the said property is to pass and descend to the children, or the children of such as may

die, such children to occupy the place of the deceased parent,. and if no child the share of such child to pass to the other children." At the time of the son's death he left surviving him two children and one grandchild, the child of his deceased daughter.

*Held:* That the deceased daughter, during her lifetime, had only a contingent remainder in the property conveyed by her grandfather to her father, for life, which never vested; that the condition precedent upon which her estate depended was that she should survive her father, and that upon the death of her father, the life tenant, her surviving child took under the deed as a purchaser, and upon her death under age the descent of her interest was not governed by section 2556 of the Code of 1904, which provides that an infant's estate derived by gift, "devise or descent" from one of his parents, shall descend and pass to his kindred on the side of that parent, but was governed by section 2548 of the Code of 1904, and that her father, her surviving parent, took under that section.

4. REMAINDERS, REVERSIONS AND EXECUTORY INTERESTS—*Vested or Contingent Remainders—Rule of Construction.*—The law prefers vested to contingent remainders, and courts will always construe remainders to be vested rather than contingent, where the construction is doubtful, but where the language is not doubtful, this rule does not justify the straining of the language used in order to make the estate created a vested rather than a contingent remainder.

Error to a judgment of the Circuit Court of Amherst county, in an action of ejectment. Judgment for plaintiffs. Defendants assign error.

*Affirmed.*

The opinion states the case.

*William Kinckle Allen, O. L. Evans* and *Edward Meeks,* for the plaintiffs in error.

*Volney E. Howard* and *L. Grafton Tucker,* for the defendants in error.

PRENTIS, J., delivered the opinion of the court.

Charles Tucker, the great-grandfather of the infant plaintiffs, by deed dated August 17, 1866, conveyed a large tract of land to Edmund P. Tucker, his son, in consideration of the love and affection which he bore to his son. After describing the property, the deed proceeds: "And the said Charles Tucker doth hereby warrant generally the land conveyed in trust for the use and benefit of the said Edmund P. Tucker and his family during the life of the said Edmund P. Tucker, the property to be applied under the control of said Edmund P. Tucker in such manner and proportion as he may think proper, and if it should hereafter appear that it is to the interest of the family of said Edmund P. Tucker, of which the said Edmund P. Tucker is to be the judge, the said land should be sold, then power and authority is given to the said Edmund P. Tucker to sell and dispose of the same and to invest the proceeds in other land to be held for like purposes and under like limitations and conditions, and in no event is the said property to be liable for any debts now due by the said Edmund P. Tucker, contracted individually or as a member of any concern, or that may hereafter be contracted by him, and at the death of the said Edmund P. Tucker the said property is to pass and descend to the children, or the children of such as may die, such children to occupy the place of the deceased parent, and if no child, the share of such child to pass to the other children."

The determination of the controversy in this case depends upon the construction of the clause of that deed which disposes of the property after the death of Edmund P. Tucker—that is, whether his children took a vested or contingent remainder thereunder.

At the time of Edmund P. Tucker's death he left surviving him two children, E. A. Tucker, a son, and Ida L.

Tucker, a daughter, and one grandchild, Nannie Leonard Bibb. This Nannie Leonard Bibb was the child of his deceased daughter, Georgia Tucker, who had married William G. Bibb and died prior to the death of her father, Edmund P. Tucker, after giving birth to the said Nannie Leonard Bibb. After Georgia Tucker Bibb died, her surviving husband, William G. Bibb, married his first wife's youngest sister, Ida L. Tucker, and the infant defendants in error, plaintiffs in the trial court, are the issue of this last marriage. After the death of Edmund P. Tucker, the land was divided in a partition suit between the two children of Edmund P. Tucker—that is, E. A. Tucker and Ida L. Bibb —and his grandchild, Nannie Leonard Bibb. After this partition, Nannie Leonard Bibb died, an infant of the age of seven years. Thereupon, Ida L. Bibb and her brother, E. A. Tucker, apparently assumed that inasmuch as Nannie Leonard Bibb, the daughter of Georgia Tucker Bibb, had died in infancy, unmarried and without issue, they inherited from her under section 2556 of the Code, providing that, "If an infant die without issue, having title to real estate derived by gift, devise or descent from one of his parents, the whole of it shall descend and pass to his kindred on the side of that parent from whom it was so derived, if any such kindred be living at the death of the infant." In accordance with that assumption the land in controversy has been sold and conveyed to the plaintiffs in error, all of whom derive their title, directly or indirectly, through Ida L. Bibb and E. A. Tucker; and their title is valid if, under the deed from Charles Tucker to Edmund P. Tucker, Georgia Tucker Bibb, daughter of Edmund P. Tucker, took a vested interest or remainder in the land in controversy.

On the other hand, if Georgia Tucker Bibb, daughter of Edmund P. Tucker, took a contingent interest and her remainder therein never vested, but on the contrary failed

at her death, and thereafter, at the death of Edmund P. Tucker, the life tenant, vested in her infant daughter, then she, Nannie Leonard Bibb, took as a purchaser under the Charles Tucker deed, and having derived her title, not by gift, devise or descent from her mother, but by purchase under the deed from Charles Tucker, then section 2556 has no application, and at her death her father, William G. Bibb, inherited her estate under section 2548 of the Code. Acting upon this claim (their father, William G. Bibb, having died), his three infant children, claiming as the heirs at law of their father, by their next friend, who is also their guardian, instituted their action of ejectment against the present claimants of the property, who claim title under E. A. Tucker and Ida L. Bibb. There is no disputed question of fact which affects the controlling issue, so that the question to be determined is purely a question of law.

No attempt will be made to reconcile the cases involving the question of when a remainder is vested or contingent.

In *Howbert* v. *Cauthorn,* 100 Va. 649, 43 S. E. 683, it is held that where there was a grant to a trustee for the benefit of Lucy Ann Thomas for life, with remainder in fee simple to the children of the said Lucy Ann living at her death and the descendants of such as may be dead, in equal shares by stocks, and if there be no such child or children, nor descendants of any such, living at the death of the said Lucy Ann, then over, that the children of Lucy Ann Thomas took contingent remainders; and that the interest of each child was too unsubstantial and shadowy to be attached for the payment of debts. .

In *Wilson* v. *Langhorne,* 102 Va. 634, 47 S. E. 872, this is said: "The controversy in this case arises over the disposition of the interest of A. A. Langhorne in the property bequeathed by A. H. Armistead to a trustee, for Nannie M. Langhorne during her lifetime, and at her death to her chil-

dren surviving her, or their descendants. As it could not be known until her' death which of her children would survive her, they took contingent remainders, which became vested, upon the death of Nannie M. Langhorne, in such of her children as were then living." (Citing *Howbert* v. *Cauthorn*.) "Upon this point there is no dispute." *Dickinson* v. *Hoomes*, 1 Gratt. (42 Va.) 308; *Jameson* v. *Jameson's Adm'x*, 86 Va. 51, 9 S. E. 480, 3 L. R. A. 773; *Vashon's Ex'or* v. *Vashon;* 98 Va. 170, 35 S. E. 457; *Schaeffer* v. *Schaeffer*, 54 W. Va. 681, 46 S. E. 150. These Virginia authorities are in accord with the generally accepted rule.

[1, 2] Prof. Graves, in his Notes on Real Property, section 174, defines a vested remainder thus: "A remainder is vested when it is subject to no condition precedent and is always ready during its continuance to come into the possession of a certain person already existing and ascertained on the determination of the particular estate now or hereafter, in any mannar whatsoever. And any remainder not so ready is contingent." In a note to that section he cites 20 Am. & Eng. Enc. L. 838; Gray's Rule Against Perpetuities, sections 101, 108; 2 Min. Inst. (4th Ed.) 396, and many other authorities which sustain the definition, saying, among other things: "It will be observed that the definition requires that the remainderman, at the time the question arises, should *already* be in existence and ascertained; and it is not enough, in order to consider the remainder *now* vested, that he will become ascertained at the moment the particular estate ends and the possession becomes vacant. Thus there are cases where the same event that ends the particular estate ascertains the remainderman; and whenever the possession becomes vacant there will *then* be a certain person ready to take possession; as in the limitation, to A for the life of B, remainder to the heirs of B, or to A and B for life, remainder to the survivor and his heirs. Here the remainder will vest and

come into possession *eo instanti* on the death of B in the one case, or the survivorship of A or B in the other; but meanwhile it remains contingent, because, as yet, there is no 'determinate person' in whom 'the estate is invariably fixed;' for *nemo est haeres viventis,* and who can now tell whether A or B will be the survivor?" *Allison* v. *Allison's Exo'rs,* 101 Va. 543, 566-7, 44 S. E. 904, 63 L. R. A. 920; *Rudy's Estate,* 185 Pa. St. 359, 39 Atl. 968, 64 Am. St. Rep. 654; *Eby* v. *Adams,* 135 Ill. 80, 25 N. E. 1013, 10 L. R. A. 162; *Robertson* v. *Guenther,* 241 Ill. 511, 89 N. E. 689, 25 L R. A. (N. S.) 892, note; *Clarke* v. *Fay,* 205 Mass. 228, 91 N. E. 328, 27 L. R. A. (N. S.) 458.

[3] It is therefore clear that Georgia Tucker Bibb, during her lifetime, had only a contingent remainder in the property conveyed by her grandfather to Edmund P. Tucker, her father, for life, which never vested; that the condition precedent upon which her estate depended was that she should survive her father, Edmund P. Tucker; and that upon the death of her father, the life tenant, her surviving child, Nannie Leonard Bibb, took under the deed as a purchaser.

[4] The rule that the law prefers vested to contingent remainders, and that courts will always construe a remainder to be vested rather than contingent, is invoked by the defendants. While that rule is perfectly well settled, and properly influences and guides the courts in cases where the construction is doubtful, it can never justify the straining of the language used in order to make the estate created a vested rather than a contingent remainder. The language used in Charles Tucker's deed is not doubtful, and hence the rule has no application. *Howbert* v. *Cauthorn, supra.*

These views are in accord with those of the trial court, and are decisive of this case.

None of the other errors alleged are of sufficient conse-

quence to call for any extended discussion. As to the claim that the defendanes have succeeded to the dower rights of Ida L. Bibb, it appears that the verdict of the jury expressly reserves such rights, and the judgment under review does not preclude them from asserting them in any proper proceeding.

As to the suggestion of adverse possession of their predecessor in title, Ida L. Bibb, it is sufficient to say that the evidence does not sustain this claim.

The alleged error of the court in excluding certain evidence is not harmful because had it been admitted the result would have been the same; and section 2739 of the Code expressly provides that the plaintiff may recover any specific or any undivided share of the premises, though it may be less than he claims in his declaration.

*Affirmed.*