## Richmond

### Posie F. Cooper, Committee, Etc. v. Grady W. Gregory, Sheriff, Etc., and Others.

June 19, 1950.

Record No. 3629.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Staples and Miller, JJ.

The opinion states the case.

*C. Carter Lee*, for the appellant.

*Virgil H. Goode* and *W. Eldridge Ross*, for the appellees.

HUDGINS, C. J., delivered the opinion of the court.

Posie F. Cooper, committee of Fannie Love, an incompetent, alleged in his bill filed against the administrator and the heirs of Judy Mary Love, that Judy Mary Love, by written contract, agreed to support and maintain Fannie Love for life; that in 1937, Judy Mary Love died intestate; that her daughter, Virginia Love Taylor, cared for and maintained Fannie Love until September, 1945, since which date she had been "abandoned by the heirs of said Judy Mary Love * * * and left her without any support and an object of charity;" that the death of Judy Mary Love did not excuse nonperformance of the contract. It was further alleged that a tract of 106 acres of land had been conveyed jointly to Fannie Love, the incompetent, and Judy Mary Love, and that on the death of Judy Mary Love her one-half interest had passed to her heirs at law and next of kin. The prayer was that a judgment be entered against the estate of Judy Mary Love for the amount necessary for the support and maintenance, including medical attention, of the incompetent so long as she might live; that the entire tract of land be sold and that one-half of the proceeds to which the heirs of Judy Mary Love would otherwise be entitled be used to pay for the amount already expended for the support and maintenance of the incompetent and the other proceeds be held subject to the order of the court. From an adverse decree complainant obtained this appeal.

The dominant question presented is whether the estate of Judy Mary Love is liable for the support and maintenance of Fannie Love.

On the 19th of April, 1893, Wiley Love conveyed a tract of land containing approximately 318 acres, lying in Franklin county, Virginia, to O. H. Price, in trust, for the use of his wife, Abigail Love, for life, and at her death "to the issue of the body of said Abigail Love by said husband, Wiley Love, as may be living at the time of her death, or to the children of such as may be dead." Subsequently, O. H. Price, the trustee, and Wiley Love,

the grantor, died. Thereafter Abigail Love married one Hodges.

The language used clearly expresses the intention of the grantor to carve out of the land an estate for the use and benefit of his wife, for life, and to create a contingent remainder in her children begotten by him. In express terms the period of survivorship is fixed at the death of Abigail Love (Hodges), the life tenant. Each child's interest is dependent upon the condition precedent that he survive his mother. If any one or more of the children should die leaving issue before the termination of the life estate, such issue take as purchasers under the deed. The remaindermen who are to take after the termination of the life estate cannot be known or ascertained until the death of Abigail Love Hodges. It is, therefore, clear that the children have only a contingent interest under the deed in question during the lifetime of their mother. They may never acquire a vested interest in the land, for if their mother should survive one or more of them his or their interest would pass to others whose identity at this time cannot be known or determined. *Howbert* v. *Cauthorn*, 100 Va. 649, 42 S. E. 683; *Smoot* v. *Bibb*, 124 Va. 28, 97 S. E. 355; *Compton* v. *Rixey*, 124 Va. 548, 98 S. E. 651, 5 A. L. R. 465; *Copenhaver* v. *Pendleton*, 155 Va. 463, 499, 155 S. E. 802, 77 A. L. R. 324; Minor on Real Property, 2d Ed., Vol. I, sec. 713, p. 931, *et seq.*

On November 8, 1906, the tenant for life, Abigail Love Hodges, conveyed "her entire interest" in the tract to Judy Mary Love, one of her daughters, who thus became the owner of an estate in the land *pur autre vie*, plus the contingent remainder which she took under the deed from Wiley Love.

Abigail Love Hodges was living and was eighty-one years of age at the time the evidence in this case was taken. Judy Mary Love died in 1937. Her contingent interest never vested. On the contrary, it failed because her mother survived her. This contingent interest passed, under the

express provisions of the deed, to Judy Mary Love's six children who survived her. Under the circumstances, these children, on the death of Abigail Love Hodges, would take the remainder as purchasers under the deed and not as heirs of their mother.

In 1918 there were six living children of Wiley and Abigail Love, namely: Henry D. Love, Judy Mary Love, Sallie Love, Tom E. Love, Minnie Cooper and Fannie Love, the latter being feeble-minded and incompetent. It is stated in the petition for appeal that "on December the 5th and 6th, 1918, the various children of Wiley Love and Abigail Love Hodges assembled, and effected a partition and rearrangement of their various possessory and remainder interests. The land they severed into three tracts, while the life estate *pur autre vie* owned by Judy M. Love was relinquished by her."

The controversy in this case involves only that part of the partition deed in which the four legally competent children of Wiley and Abigail Love attempted to convey Lot No. 2 containing 106 and a fraction acres to Judy Mary Love, and the other deed in which the same four children attempted to convey the interest of Fannie Love, the incompetent, to Judy Mary Love. The pertinent provisions of this deed are as follows: "that whereas Wiley P. Love was the father of the above named parties, as well as a daughter, Fannie Love, who is unmarried and incapable of attending to her own affairs and *needs some one to take care of her and treat her kindly,* and whereas the said Fannie Love is entitled to a one-sixth interest in the real estate of her father said Wiley P. Love, which real estate has already been divided into six parts by the above named parties, now therefore said parties of the one part do hereby agree that said Judy Mary Love, party of the other part, *shall take the said Fannie Love into her custody and control, take good care of her, be kind* to her, and in consideration therefor said Judy Mary Love is to have the 1/6 interest of the said Fannie Love in fee simple and absolutely so

far as the parties of the one part are concerned, and thereupon said parties of the one part do hereby grant and convey, with Special Warranty, unto the party of the other part the 1/6 interest of Fannie Love in the lands of Wiley P. Love, deceased, lying near Sydnorsville, about one mile west of same, containing 53 acres, more or less, and is cut off with the lot of Judy Mary Love." (Italics supplied.)

This is a novel instrument. It shows on its face (1) that Fannie Love was incompetent; (2) that the grantors, with full knowledge of this fact, attempted to convey her interest in the land; (3) and it contains an incorrect statement of Fannie Love's interest.

Appellant concedes the obvious, namely: that the grantors had no right to alienate the incompetent's interest in the land, but he contends that if Fannie Love died her mother would inherit her interest, and that on her mother's death, the grantors, as her children, would inherit this interest which passed by this deed to Judy Mary Love. Therefore, complainant says, the deed is supported by valuable consideration.

This argument is fallacious. In the first place, as heretofore stated, Fannie Love did not own a one-sixth interest in the land. Fannie Love's only interest is dependent upon the condition precedent that she survive her mother. If she does not survive her mother, by the express terms of the deed from Wiley Love, her contingent interest would not pass to her mother, but to others described in the deed, whose identity cannot be known or determined at this time. Even if Fannie Love owned a vested interest, as appellant contends, and she died leaving her mother as her only heir, it does not follow that these children would inherit her interest. Abigail Love Hodges' second husband would be entitled to his curtesy right in any land of which his wife died seized and possessed, or she might devise her property to others.

Appellant further contends that the deed purporting to

convey Fannie Love's interest is under seal, which conclusively imports consideration.

This is true to a limited degree, but it is not true where the conveyance is attacked for fraud, mistake, oppression or unconscionableness. *Watkins* v. *Robertson*, 105 Va. 269, 54 S. E. 33, 115 Am. St. Rep. 880, 5 L. R. A. (N. S.) 1194; *Norris* v. *Barbour*, 188 Va. 723, 51 S. E. (2d) 334.

This is not a suit between the original parties to the contract. It is a suit in equity instituted by the committee of the incompetent against the grantee's administrator and her children as heirs at law. These children do not inherit the contingent interest as the heirs of their mother, but they take as purchasers under the deed from Wiley Love. A fraud would be perpetrated upon respondents if they were denied the right to prove want of consideration and all the facts and circumstances surrounding the parties at the time the deed of December 6, 1918, was executed. "It is elementary that a court of equity which looks to the substance and not merely to the form of the transaction, may be resorted to in order to prevent a fraud." *Norris* v. *Barbour, supra.*

There can be no consideration where the party has no interest he can convey. "Where a purchaser pays for certain property and it turns out that the vendor has no title thereto, or that his title is void, there is a total failure of consideration. A promise is not made for a promise but for the land; the moving cause is the estate. A total failure of title is a total failure of consideration." Jones Cyclopedia of Real Property Law, Vol. 1, p. 120.

The learned Chancellor, discussing the unconscionableness of the alleged contract, said: "* * * the value of the entire tract of land in 1918 was only $1,535.00; that after deducting the value of the life estate upon a commuted basis, the remainder shares of each would only be worth approximately $103.00 and it should be noted that Judy Mary Love never acquired title to this pittance. * * *

"Upon the most conservative basis, I would say that Judy Mary Love and her daughter have incurred an expenditure in time and in money, in caring for Fannie for a period of thirty-five years amounting to at least $1,000 per year. If this service had been purchased from others, it would have run even higher. * * * There was never the possibility that Judy Mary would benefit in the slightest from this transaction. In fact, I am inclined to the opinion that the attempt to convey Fannie's share to Judy Mary was nothing more than a mere gesture or token, since the others had never assisted their unfortunate sister, and never seriously intended this as payment in full for a life of burdensome service."

Equity will not lend its aid to the performance of such an unconscionable bargain—certainly not in a case of this nature where the other contracting parties surrendered no rights and suffered no detriment.

Fannie Love's contingent interest in the land is too unsubstantial and shadowy to be sold by an order of court at this time. The only parties before the court are Fannie Love, by her committee, on the one hand, and the heirs of Judy Mary Love on the other. Since the committee does not state a case which entitles his ward to any relief, the trial court should have dismissed the case without attempting to determine the rights of the other remaindermen who were not before the court. This Court, proceeding to enter such decree as the trial court should have entered, and without passing upon the rights of the parties who executed the partition, deed, bearing date on December 5, 1918, will enter an order dismissing the case from the docket.

*Dismissed.*