## Staunton.

## Aetna Casualty and Surety Company v. Earle-Lansdell Company.

### September 17, 1925.

1. HIGHWAYS—*Bond of Contractor—Acts of 1922, Page 673—Liability of Surety for Labor and Material—Case at Bar.*—The instant case was an action against the surety on a road contractor's bond to recover for labor and material furnished the principal. The bond was given under Acts of 1922, page 673, requiring from the contractor a bond conditioned upon the faithful performance of the work in strict conformity with the plans and specifications for the same and contained the condition that the contractor should promptly pay claims for labor and material incurred in the construction contracted, the bond accorded substantially with the provisions of the contract.

   *Held:* That the condition as to payment for labor and material was valid and that a judgment against the surety must be sustained.

2. STARE DECISIS—*Interpretation of Judicial Opinions.*—All expressions in judicial opinions should always be scanned and interpreted with reference to the specific issues then to be decided. It is not often possible so to forecast the varying conditions which arise in human transactions as to epitomize the law in rigid axioms.

3. BONDS—*Statutory Bonds—Conditions Not Authorized by Law.*—A statutory bond which contains conditions authorized by law as well as unauthorized conditions is void as to any condition imposed beyond what the law requires and good as to the conditions in conformity with statute. The unauthorized conditions are mere surplusage.

4. BONDS—*Statutory Bonds—Bonds of Fiduciaries, Public Officers and in Judicial Proceedings—Conditions Must Conform with Law.*—As to bonds of fiduciaries, public officers and those required in judicial proceedings, such as attachment, injunctions, etc., no official is vested with any discretion whatever (there being no voluntary contracts involved), but all the rights, duties and obligations of the principals are fixed by law, generally by statute, consequently the liability of the surety under such statutory bonds is limited by the words of the statute and conditions not warranted by the statute are void.

5. BONDS—*Statutory Bonds—Contractors' Bonds for Public Works—Distinguished from Fiduciary Bonds.*—Contractors' bonds for public

works, though required by statute, must be construed in connection with specific contracts, and this differentiates them from fiduciary bonds.

6. Bonds—*Statutory Bonds—Contractors' Bonds for Public Works—Construction—Following Statute.*—Under many statutes authorizing contracts for road work, contractors are required to give bonds which must follow the statute, although mere informalities in the bond or in its execution will not necessarily avoid the bond. Such statutes should be liberally construed to effectuate their purpose.

7. Bonds—*Statutory Bonds—Contractors' Bonds for Public Works—Where Statute Does Not Require Such Bond.*—Even in the absence of a statute requiring contractors for public works to give a bond, where a board of county commissioners or other public authority is authorized by statute to contract for the performance of a work of public improvement, it may, by virtue of its incidental powers, require of the contractor the execution of a bond with surety conditioned for the proper performance of the work and other matters properly related thereto.

8. Bonds—*Statutory Bonds—Contractors' Bonds for Public Works—Bond Broader than the Statute.*—Where a statute requires that a contractor for public works shall give a bond conditioned as specified in the statute, the public authorities may, by virtue of their incidental powers, take a bond more broadly conditioned than is required by the statute, provided the statute does not prohibit the taking of such bond, and the matter of the additional provisions is properly related to the work of the improvement; and if such a bond is voluntarily given in consideration of the contract it may be enforced according to its terms.

9. Bonds—*Statutory Bonds—Bonds of Contractors for Public Works—Bonds to Secure Payment of Subcontractors, Laborers and Material Men—Implied Powers.*—Trustees or other persons upon whom the power has been conferred of entering into contracts for the construction of public works are regarded as having authority to take a bond from the contractor to secure the payment of subcontractors, laborers and material men.

10. Bonds—*Statutory Bonds—Bonds of Fiduciaries—Bonds of Contractors for Public Works—Distinction as to Statutory Conditions.*—There is nothing either illogical or inconsistent between the strict rule applicable to the bonds of fiduciaries and the same rule slightly modified as to bonds of contractors doing public work. While both are required by statute and are therefore statutory, this constitutes their chief similarity. In the case of fiduciaries, their duties are clearly defined by law and cannot be otherwise varied or enlarged, whereas, in the case of contractors, the controlling statute is of necessity general in its requirements, because the specific duties and obligations of contractors necessarily arise out

of voluntary contracts which of necessity vary, and their obligations in each instance are defined by their specific contracts.

11. HIGHWAYS—*State Highway Commission—Conditions of Contractor's Bond—Acts of 1922, Page 673.*—Section 6 of the act of 1922, page 677, confers upon the chairman of the State Highway Commission plenary powers for constructing, improving and maintaining the roads embraced in the State highway system. Section 8 of the act of 1922, page 678, provides for a Contractor's bond "conditioned upon their faithful performance of the work." To construe this statutory provision as excluding a condition in the contractor's bond to pay claims for labor and material would defeat the purpose of the act. As the securing of materials is an essential part of the contract to do the work, failure or delay in securing them would prevent or retard performance, and, therefore, if so construed, the statutory condition would partly fail of its purpose, which certainly is to assure the performance of the contract in every essential particular.

12. HIGHWAYS—*State Highway Commission—Conditions of Bond—Acts of 1922, Page 673—Reference to Plans and Specifications.*—There is no statute providing for uniform contracts, plans or specifications for the building of highways. All of these particulars rest in the control and are confided to the discretion of the State Highway Department, vested with plenary power, so that when the General Assembly provides for the making of contracts for particular work and for bonds for the faithful performance of that work in conformity with the plans and specifications therefor, it is perfectly apparent that the obligations of the contractor and his surety under such bonds are determined by the specific plans and specifications and the contracts so referred to.

13. HIGHWAYS—*State Highway Commission—Acts of 1922, Page 673—Does Not Limit Power to Prescribe Terms of Contractors' Bonds.*—Acts of 1922, page 673, vests in the Highway Department the power and imposes upon it the duty of prescribing the form of contracts with all of their incidental provisions, and section 4 prescribing a bond was not intended either to limit these powers, or to prescribe in precise words the sole conditions of such bonds. In the instant case the language of the statute is broad enough to cover all the incidental provisions embodied in the contract and in the bond which was sued on.

14. JUDICIAL BONDS—*Bond for Highway Construction—Action against Surety by Creditor for Labor and Material.*—Under section 5143, Code 1919, a creditor of a road contractor for labor and material may maintain an action on the contractors bond against his surety, such bond being made in part for his benefit.

Upon a Petition for Rehearing.

November 18, 1925.

15. Streets and Highways—*Suit on Contractor's Bond for Labor and Material Furnished.*—On petition for rehearing it was contended that as the statute (Acts 1922, chapter 403, section 8) makes the contractor's bond payable to the Commonwealth and fixes the minimum penalty, the penalty of the bond cannot be depleted by a claim based upon materials and labor supplied under the contract, because this would diminish the security of the Commonwealth. In the original opinion it was held that the State Highway Commissioner in requiring a bond obligating surety to pay for all labor and materials furnished, did not exceed the authority vested in him by the statute. This holding fully protects the rights of the surety for the limit of its liability is the gross penalty of the bond, and as the question was not raised in the instant case by the Commonwealth or any other potential claimant under the bond, it was not necessary to decide between various claimants as to priorities, or to apportion the available funds which were realized upon the bond between them.

Error to a judgment of the Circuit Court of the city of Richmond in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*George Bryan* and *W. Braxton Dew*, for the plaintiff in error.

*Hall, Hall & Peachy* and *Harold S. Bloomberg*, for the defendant in error.

*H. J. Kiser* and *C. R. McCorkle*, amici curiae.

Prentis, P., delivered the opinion of the court.

H. A. Donald & Company, Inc., entered into a contract with the Commonwealth, by H. G. Shirley, Chair-

man of the State Highway Commission, to build about eleven miles of bituminous macadam roadway in Rockbridge and Augusta counties, in consideration of the specified unit prices and under certain conditions set forth in the specifications, special provisions, plans and proposal annexed to the contract. As required by law, the contractor entered into a bond for the performance of this contract together with the Aetna Casualty and Surety Company, hereinafter called the defendant, as surety therefor.

[1] The contractor owes Earle-Lansdell Company (the plaintiff) a balance for materials and labor supplied under the contract, has been adjudicated a bankrupt, and the plaintiff has recovered therefor $5,464.00, against the defendant surety, who denies liability.

After reciting the contract and the obligation of the contractor to execute it, the bond sued on has this condition:

"The condition of this obligation is such that if the above bounden principal shall in all respects comply with the terms and conditions of said contract and his obligations thereunder, including the 'specifications,' 'special provisions,' 'proposal,' and plans therein referred to and made a part thereof, and such alterations as may be made in said plans and specifications as therein provided for, and shall indemnify and save harmless the said owner against or from all costs, expenses, damages, injury or loss to which the said owner may be subjected by reason of any wrongdoing, misconduct, want of care or skill, negligence or default, including patent infringement, on the part of said principal, his agents or employees, in the execution or performance of said contract, including errors in plans furnished by the principal, and shall promptly pay all just claims for damages, for injury to property and for

labor and material, incurred by said principal in or about the construction or improvement contracted for, then this obligation to be void; otherwise, to be and remain in full force and virtue in law.

Various provisions of the elaborate contract show that the bond accords therewith substantially.

This bond was required by the contract under the general statute (Acts 1922, page 673, General Laws of Va., section 1969, clause 8; Michie's Ann. Code, 1924, .section 1969-h), providing for a bond to be approved by the chairman, "conditioned upon the faithful performance of the work in strict conformity with the plans and specifications for the same," and hereafter more fully quoted.

The defendant craved oyer of the bond and demurred to the notice of motion for judgment on these grounds:

1. That its liability as surety under this, a statutory bond, is measured by the terms of the statute, and the statute by its terms does not contemplate such a liability as is claimed by the plaintiff's motion.

2. That the bond given herein, by its terms, does not contemplate such a liability.

3. That there is no statute giving a right of action on this bond for the benefit of the plaintiff herein.

This demurrer having been argued and overruled, the same question (for there is but one) was raised after verdict by motion to set aside as contrary to the law and the evidence; and also by this specific motion in arrest of judgment:

"The defendant, by counsel, moves the court in .arrest of judgment for error apparent upon the face of the record in this, to-wit, that the liability of the .defendant under the bond introduced in evidence by the plaintiff is measured solely by the statute authorizing and requiring the execution of such bond, and

that said statute does not contemplate the liability
upon defendant found by the verdict of the jury."

These motions were also overruled so that the three
assignments present this question, viz.: Does an action
lie in favor of the plaintiff against the defendant surety
upon the contractor's bond referred to?

To answer this question, then, requires a considera-
tion of the contract, the bond and the statute requiring
the bond.

The case has been ably and elaborately argued, and
several incidental or collateral questions have been ad-
verted to. We think it unnecessary to follow the
learned counsel into all of these discursive discussions.

As to the decisive question, it is contended with
great confidence that the error of the trial court is
perfectly plain, and that the case must be reversed,
unless we are prepared to disapprove a well settled rule
established in Virginia; and for this contention three
cases are cited as conclusive.

The first of these is *Pratt* v. *Wright*, 13 Gratt. (54
Va.) 175, 67 Am. Dec. 767. There a guardian's bond
contained conditions not specified by the statute, which
only required that he should give bond "for the faithful
execution of his office." The bond, in addition to this,
contained conditions which required a proper account-
ing to the ward, and to save harmless the justices who
took the bond from trouble and damages, etc. The
guardian having failed to account to the ward, the sure-
ties being sued denied all liability under the bond,
claiming that it was void because it failed to comply
with the statute. Upon this issue the court held that
the bond itself was not void, but that the unauthorized
conditions therein were. It was held valid and binding
on the sureties so far as it was in conformity with the
act.

[2, 3] Whether or not the precise unqualified general expressions used in that case, and here relied upon as applicable and conclusive, would have been used if the issue had been different, we do not know, but it is manifest that the only question then before the court was whether or not those sureties were liable to the ward on that bond, notwithstanding the unauthorized conditions; and it is certain that all expressions in judicial opinions should always be scanned and interpreted with reference to the specific issues then to be decided. It is not often possible so to forecast the varying conditions which arise in human transactions as to epitomize the law in rigid axioms. For its exoneration here the defendant surety confidently relies on that case (which has been frequently followed), because as there stated substantially, the true rule, which is in consonance with the dictates of the common law and common sense, is to hold the bond void as to any condition imposed beyond what the law required, and good so far as it was in conformity with the act.

Following this case *Gibson* v. *Beckham*, 16 Gratt. (57 Va.) 321, where the court referred to the rule announced in *Pratt* v. *Wright*, but the question was not there involved. The surety there denied liability because the court had granted an administration with the will annexed before the will referred to had been probated. The surety claimed that the court had no authority to take such a bond at that time, but he was held liable upon the ground that the order granting the administration could not be collaterally assailed.

This was followed by *Yost* v. *Ramey*, 103 Va. 117, 48 S. E. 862, where the surety on an executor's bond denied his liability because the bond contained a condition waiving the right to settle with any funds other than legal tender of the United States, which condition was

not then required by any statute, while instead thereof the bond should have contained a waiver of any claim to settle in coupons of the State of Virginia, this being the condition at that time prescribed by statute. The court held the surety liable upon the ground that the unauthorized condition was mere surplusage, and cited the two previous cases to which we have referred, with approval.

[4] These cases have been generally followed, not only in this jurisdiction but elsewhere; and the rule has been frequently applied to bonds like those—that is, to bonds of fiduciaries, as well as to bonds of public officials, and to those required where there were attachments, injunctions, or other judicial proceedings.

This is quite well settled, and it is partly based upon the very sound reason that as to such bonds no official is vested with any discretion whatever (there being no voluntary contracts involved), but where all of the rights, duties and obligations of the principals in such bonds are fixed by law, generally by statute.

We are told, in addition, by the learned counsel, that disastrous consequences will follow any departure from this rule, which, as they construe it, is inexorable, namely, that the liability of every surety under a statutory bond is limited and measured by the words of the statute, strictly and narrowly construed.

The precise question presented in this case has not arisen before in Virginia, but it has frequently arisen elsewhere, and many courts have construed such bonds and statutes against the strict view so tenaciously urged by the defendant's attorneys, and no such disastrous results have apparently there ensued.

[5] Contractors' bonds for public works, though required by statutes, must be construed in connection with specific contracts, and this differentiates them from

fiduciary bonds like those to which the cases heretofore cited refer. This general statement from 29 C. J. 611, is well supported:

[6-8] "Under many statutes authorizing contracts for road work, contractors are required to give bonds which must follow the statute, although mere informalities in the bond or in its execution will not necessarily avoid the bond. Such statutes should be liberally construed to effectuate their purpose. Even in the absence of a statute providing that such a bond be taken, where a board of county commissioners is authorized by a statute to contract for the performance of a work of public improvement, it may, by virtue of its incidental powers, require of the contractor the execution of a bond with surety conditioned for the proper performance of the work and other matters properly related thereto. Where a statute requires that a bond be taken, conditioned as specified by such statute, the board may, by virtue of such incidental powers, take a bond more broadly conditioned than is required by the statute, provided the statute does not prohibit the taking of such a bond, and if the matter of the additional provisions is properly related to the work of the improvement; and if such a bond is voluntarily given in consideration of the contract, it may be enforced according to its terms."

[9] Authority to require contractors on public works to secure debts for labor and materials like those which the plaintiff here asserts is thus stated in 22 R. C. L. 628, section 29: "Trustees or other persons upon whom the power has been conferred of entering into contracts for the construction of public works are regarded as having authority to take a bond from the contractor to secure the payment of subcontractors, laborers and material men." *National Surety Co.* v. *Hall-Miller Decorating Co.*, 104 Miss. 626, 61 So. 700, 46 L. R. A. (N. S.) 325, and note.

So it is where the contract is for the construction of county buildings. *Knapp* v. *Swaney*, 56 Mich. 345, 23 N. W. 162, 56 Am. Rep. 397; *United States Gypsum Co.* v. *Gleason*, 135 Wis. 539, 116 N. W. 238, 17 L. R. A. (N. S.) 906, and note.

"The power to make improvements and to let contracts therefor, and to exact of the contractor a bond for the faithful performance of his contract, necessarily implies the power to do everything necessary for the faithful performance of the work, for the protection of the city and its citizens, and for securing the best and lowest possible bids. Thus, a municipality authorized to make improvements upon its public streets and to exact of the contractor his bond for the faithful performance of his contract, has power to require such bond to contain a condition that the contractor will pay all persons performing labor or furnishing materials at his request and for the purpose of assisting him in the completion of his contract. Such a requirement gives credit to the contractor and enables him to secure labor and purchase material more readily and on better terms than could be done without the credit. The city is also enabled to secure greater competition and even better execution of the work, and it is to its interests to secure these advantages." 22 R. C. L. p. 629. *St. Louis* v. *Von Phul*, 133 Mo. 561, 34 S. W. 843, 54 Am. St. Rep. 695.

The precise question is elaborately annotated in the case of *U. S. Fidelity & Guaranty Co.* v. *Fred H. Poetker* (180 Ind. 255, 102 N. E. 372), L. R. A. 1917B, page 990. Every species of statutory bond appears to be discussed and the distinction to which we have alluded is indicated at page 1015. A number of cases are cited, among them *Baker* v. *Bryan* (1884), 64 Ia. 561, 21 N. W. 83. There the statute required a bond to be given, conditioned "for the faithful performance of the contract,"

but did not otherwise prescribe the conditions, and it was said in this connection that "it, therefore, cannot be doubted that the law intended that covenants to pay the claims of subcontractors, which would protect the interest of the district, could be incorporated therein." The reasoning of the opinion fully supports the conclusion.

The qualification of this view is well indicated in the case of *U. S. Fidelity and Guaranty Co.* v. *Iowa Telephone Co.* (1916), 174 Ia. 476, 156 N. W. 727. There the ordinance required a bond to be given by a telephone company that it would restore the street after laying its conduit therein, but the bond went further than the ordinance and also required the maintenance of the street. It was held that so much of the bond as required maintenance of the street was invalid; this because evidently the maintenance was unconnected with the construction work of the contractor, indefinite in its duration, and such an obligation could not reasonably be implied as incidental to the contract to lay the conduit.

In construing varying statutes and bonds based thereon, this implied power to provide by contract and bond for the payment of laborers and for materials furnished has generally been maintained, and this is quite apparent from the above citations and the elaborate notes to *City and County of Denver* v. *Hindry* (40 Colo. 42, 90 Pac. 1028), 11 L. R. A. (N. S.) 1028.

A recent case is *Clatsop County, ex rel. Hildebrand* v. *Feldschau*, 101 Ore. 369, 199 Pac. 953, 18 A. L. R. 1221, note. It is there held that the mere fact that a bond required by a county from a contractor for road improvement imposes a greater liability than that required by the statute, does not render the provisions in excess of such statutory requirements void; and there too is a

note in which many supporting cases are cited. This is
said: "Such provisions are in conformity to a moral
duty resting upon county officials to see that its citizens
and others who furnish laborers and subcontractors with
materials and supplies, and extend credit to a con-
tractor to assist in the performance of the public work
are protected. Such provisions tend to promote effi-
ciency in the construction of the roads of a county.
They are in the interest of justice and equity, and are
not *ultra vires*. They do not in any way contravene
any statute or public policy of this State."

[10] There is nothing either illogical or inconsistent
between the strict rule applicable to the bonds of fidu-
ciaries and the same rule slightly modified as to bonds of
contractors doing public work. While both are re-
quired by statute and are therefore statutory, this con-
stitutes their chief similarity. In the case of fidu-
ciaries, their duties are clearly defined by law and can-
not be otherwise varied or enlarged, whereas, in the case
of contractors, the controlling statute is of necessity
general in its requirements, because the specific duties
and obligations of contractors necessarily arise out of
voluntary contracts which of necessity vary, and their
obligations in each instance are defined by their specific
contracts. This logical distinction is generally recog-
nized. Stearns on Suretyship, section 138, page 229.

This State is engaged in a general program of high-
way construction, and to that end the State Highway
Commission and its chairman have been vested with
many powers and duties.

Section 6 of the act of 1922, page 677, contains this
comprehensive language: "Except such powers as are
conferred by law upon the State Highway Commission,
the chairman shall have plenary powers for construct-
ing, improving and maintaining the roads embraced in

the State highway system." Section 8 (Acts 1922, chapter 403, page 678) is the section under which the bond which is here involved was executed. The pertinent language is: "The contract shall be let to the lowest responsible bidder for the particular work covered in the bid, and the successful bidder shall enter into a bond payable to the Commonwealth of Virginia in the sum of at least thirty per centum of the estimated cost of the work, which bond must be approved by the chairman, and conditioned upon the faithful performance of the work in strict conformity with the plans and specifications for the same, which bond shall be kept on file in the office of the State Highway Commission."

[11] It is stoutly contended that these words of this statute as to the condition of the bond, "conditioned upon the faithful performance of the work," so expressly limit the obligation as to exclude the plaintiff from its security. This construction, however, would defeat its purpose. The words quoted are expressive merely of the result of the contract—the completed road. As the securing of materials is an essential part of the contract to do the work, failure or delay in securing them would prevent or retard performance, and, therefore, if so construed, the statutory condition would partly fail of its purpose, which certainly is to assure the performance of the contract in every essential particular.

This statute in terms fixes the measure of the contractor's obligation faithfully to perform the work according to the plans and specifications. So, too, does the condition of the bond. These plans and specifications also require the bond and indicate its obligatory conditions in these words:

"4. Contract bond required: In order to insure the faithful performance of each and every condition, stipu-

lation and requirement made by this contract and to indemnify and save harmless the party of the first part from any and all damages, either directly or indirectly, arising out of any failure to perform the same, including payment for all labor and materials purchased by the party of the second part in the prosecution of this contract, the party of the second part shall execute and deliver herewith a bond in the penalty of not less than thirty (30) per centum of the estimated amount of the contract award, conditioned for such faithful performance of such conditions, stipulations and requirements, with surety secured by a surety company authorized to do business in the State of Virginia and satisfactory to the chairman, or with the consent of the chairman, liberty bonds or other satisfactory collateral, as hereinbefore provided."

So the promise to pay "for all labor and materials" contained in the bond sued on merely effectuates this specification of the contract.

[12] There is no statute providing for uniform contracts, plans or specifications for the building of highways. All of these particulars rest in the control and are confided to the discretion of the State Highway Department, vested with plenary power, so that when the General Assembly provides for the making of contracts for particular work and for bonds for the faithful performance of that work in conformity with the plans and specifications therefor, it is perfectly apparent that the obligations of the contractor and his surety under such bonds are determined by the specific plans and specifications and the contracts so referred to. Having broad general powers to construct highways and to require bonds for the faithful performance of the work, implies the authority to do everything which is essential thereto in order to accomplish the main purpose—that is, the

doing of the work. But how are the obligations of the contractor to be determined except by reference to the plans and specifications, contracts and bonds for the execution of that specific work? All of these are indissolubly linked and it is for the enforcement of each and every one of the contractual obligations thereby created that bond is required.

The general authority to build roads and to make contracts therefor is specifically given by the statute. Authority to make contracts certainly includes the power to specify or negotiate the terms and conditions thereof, especially such as will best promote speedy construction, so the express statutory power to take bonds for the "performance of the work" necessarily implies the performance of such work pursuant to such contracts, otherwise there would be no measure of the obligation. It is thus impossible to divorce the work from the contract, or to conceive of work to be done except as required by the contract to do it. It would be "sticking in the bark" indeed to hold that when the statute requires a bond "for the faithful performance of the work in strict conformity with the plans and specifications for the same," we could ignore consideration of any of the obligations imposed by the contract for the performance of that work; but to this we would be driven if we were so to construe this bond as to relieve the defendant surety in this case. True it is that a statutory bond must conform to the statute—not necessarily to the precise words of the statute, but substantially thereto, so as to accomplish and not defeat its purpose.

In this statute, then, we find all the power that is necessary to support the specific contract and condition obligatory here involved.

We think there is no reason for further elaboration.

The General Assembly was wise when it declined to specify the precise character of the roads to be constructed, of the materials to be used, or how best to assure their quality and adequate supply, or any of the details of such plans, specifications and contracts. The chairman of the Highway Commission has been by statute empowered, in the exercise of his discretion, to make the provision which is here challenged because it is so proper for the maintenance of the credit of the contractors and for the assurance of payments due to those who labor on road construction and furnish the materials therefor, to the end that lack of labor and materials shall not impede or obstruct highway construction.

[13] Our conclusion is that this statute vests in the department the power and imposes upon it the duty of prescribing the form of contracts with all of their incidental provisions, and that the statute prescribing a bond was not intended either to limit these powers, or to prescribe in precise words the sole conditions of such bonds. The general language of the statute is broad enough to cover all the incidental provisions embodied in the contract and in the bond which is sued on, which are clearly promotive of the main purpose.

[14] Having determined this question, it is unnecessary to do more than refer to Code, section 5143, which authorizes the plaintiff to sue upon such a bond, so made in part for its benefit. *Smokeless Fuel Co.* v. *C. & O. Ry. Co.*, *ante*, page 355, 128 S. E. 624.

*Affirmed.*

UPON A PETITION FOR REHEARING.

Richmond, Va., November 18, 1925.

PER CURIAM

[15] Except for the fact that the learned attorneys for the plaintiff in error state that the original opinion "does not bear out and fully support the adverse decision, because it entirely overlooks and fails to refer to the main defense interposed to this action," we should say nothing more about this case.   In view of that statement, we reply that the defense which in the petition for rehearing is spoken of as the main defense was not so construed by the court when the case was presented. We looked upon it as a mere incident, affording, it is true, fair basis for argument, but which failed along with the main defense.   We did not overlook it, but we considered that it was necessarily disposed of by the result announced, namely, that the claimant was entitled to recover under this bond.

This point, so far as we grasp it, is that inasmuch as the statute makes the bond payable to the Commonwealth and fixes the minimum penalty at thirty per cent of the estimated cost of the work, and as this accords strictly with the statute, that therefore the only beneficial right of action under that bond is in the Commonwealth for the reimbursement of the funds allotted to the State Highway Commission.   Upon this there was and is predicated an argument that the penalty of the bond cannot be depleted by this claim based upon materials and labor supplied under the contract, because this diminishes the security of the Commonwealth, and carried to its logical result might exhaust the entire penalty of the bond.

We have clearly held, as stated in the original opinion, that in requiring this bond the State Highway Commissioner did not exceed the authority vested by statute in him, and therefore sustained the recovery.   This holding fully protects the rights of the plaintiff in error, who is the surety, for it goes without saying that the limit of its liability is the gross penalty of the bond.   No such question is raised in this case by the Commonwealth or any other potential claimant under the bond, and for this reason the point was not referred to in the original opinion.   Whenever it is fairly raised, it may be necessary to decide between various claimants as to priorities, or to apportion the available funds which are realized upon the bond between them; but until that question arises, we do not think it wise to determine it.

For the reasons indicated in the original opinion, as here supplemented, the petition for rehearing is denied.

*Rehearing denied.*