## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## RICHMOND SHOPPING CENTER, INCORPORATED
v.
## WILEY N. JACKSON COMPANY, et al.

June 8, 1979.

Record No. 771276.

Present: All the Justices.

*John W. Pearsall (McCaul, Grigsby & Pearsall,* on briefs), for appellant.

*Archibald Wallace, III (Albert D. Bugg, Jr.; Sands, Anderson, Marks & Miller,* on brief), for appellees.

COMPTON, J., delivered the opinion of the Court.

In this contract action, the owner of real estate located near the site of a highway construction project seeks recovery for property damages as a third party beneficiary against several road contractors and the surety on their bond.

Appellant Richmond Shopping Center, Incorporated, the plaintiff below, filed this suit in August of 1974 against appellees Wiley N. Jackson Company, E. G. Bowles Company, E. G. Bowles, Contractor, as joint venturers, and The Continental Insurance Company, for $13,640 plus interest. Plaintiff claimed to be a third party creditor beneficiary of a contract between the Commonwealth of Virginia, Department of Highways (hereinafter, Highway Department) and the joint venture (hereinafter sometimes referred to as the contractor). The insurer was surety on the performance bond executed by the contractor as principal. Plaintiff alleged that it was damaged "by the repeated traverse" of its property by heavy equipment used by the contractor during the highway work. Plaintiff sought (1) recovery for the cost of restoring its property to its pre-damage state and (2) payment for the contractor's use of the land.

In a demurrer filed to the motion for judgment, defendants asserted that plaintiff had no right to maintain the action as a third party beneficiary under the contract or bond. The demurrer was overruled and, subsequently, the trial court heard the evidence, sitting without a jury. Later, the court assessed damages against defendants for the restoration cost in the amount of $3,874.50. Plaintiff's monetary claim for use of the land was denied.

We awarded plaintiff a writ of error to the June 1977 final judgment and defendants have assigned cross-error, primarily attacking the trial court's holding that plaintiff was entitled to sue as a third party beneficiary.

The basic facts are uncontradicted. In May of 1971, the Highway Department and the contractor executed a written contract to perform certain work related to construction of Interstate Route 195, a limited access highway, in the City of Richmond. The documents comprising this agreement included a proposal submitted by the contractor, plans, and the Road and Bridge Specifications of the Highway Department contained in a 583-page manual. The work was to be performed over a 1.5-mile north-south segment of the route which lay between points near Broad Street on the north and Cary Street Road on the south. In this area, the highway was to run below ground level in a cut on either side of previously existing railroad tracks. The plaintiff's property was located near Cary Street Road, adjacent to the work site and east of the proposed highway. Among its duties under the agreement, the contractor was to excavate in the cut, build temporary bridges, install drainage systems, and construct interior walls paralleling the railroad.

The contractor began work in June of 1971 and finished about 18 months later. During the course of work, the contractor used heavy equipment at the site including dump, pickup, and flatbed trucks. In moving to and from the work area during this period, the vehicles constantly travelled across plaintiff's property, which included a paved parking lot in a shopping center and a gravel parking area nearby. Because of this use, which was unauthorized, the asphalt surface of the parking lot was broken up, a wall used by the contractor as a loading dock was damaged, and the gravel surface of the parking area, as well as "bumper logs" used to control parking there, were destroyed. Although the contractor offered to pay for the damage to the asphalt parking lot, the parties were unable to settle the entire dispute and this action resulted.

In proceeding as a third party beneficiary, plaintiff alleged that among the obligations which the contractor assumed under the contract were the responsibilities imposed by § 107.12 of the Road and Bridge Specifications, which provided:

**Sec. 107.12 Protection and Restoration of Property and Landscape**—The Contractor shall be responsible for the preservation of all property along the line of and adjacent to the work, the removal or destruction of which is not called for by the plans. He shall use suitable precaution to prevent damage to all such property.

When the Contractor finds it necessary for any reason to enter upon private property for the prosecution of his work, the storage of materials or any other purpose, he shall secure from the owner or lessee of such property, written permission for such entry prior to moving thereon. An executed copy of this permission shall be furnished the Engineer.

The Contractor shall be responsible for all damage or injury to property of any character during the prosecution of the work resulting from any act, omission, neglect or misconduct in his method of executing the work or at any time due to defective work or materials, and this responsibility shall not be released until the project has been completed and accepted.

When any direct or indirect damage or injury is done to any public or private property by or on account of any act, omission, neglect or misconduct in the method of executing the work or in consequence of the nonexecution thereof on the part of the Contractor, he shall restore such property to a condition similar or equal to that existing before such damage or injury was done by repairing, rebuilding or restoring, as may be directed, or make settlement with the owner of the property so injured or damaged and secure from him a release

from any claim against the Department, without additional compensation therefor. A copy of this release shall be furnished the Engineer.

Thus, plaintiff asserted, it was "a third party creditor beneficiary of the . . . contract with the Virginia Department of Highways, and in particular Section 107.12 of the Road and Bridge Specifications, and of the surety's obligation to indemnify for non-performance of the joint venturers' obligations."

As the trial began, the defendants, during the opening statement, asserted that one of the issues to be decided during the hearing was whether the plaintiff was, in fact, a third party beneficiary under the contract. Defendants' principal reliance was on § 107.14 of the Road and Bridge Specifications, which provided:

**Sec. 107.14 Responsibility for Damage Claims**—The Contractor shall indemnify and save harmless the State, the Commission and all of its officers, agents and employees as well as the city, town or other municipality in which the work is performed and all of their officers, agents and employees from all suits, actions or claims of any character, name and description brought for or on account of any injuries received or sustained by any person, persons or property by or from the said Contractor or by or in consequence of any neglect in safeguarding the work, through the use of unacceptable materials in the construction of the improvement by or on account of any act or omission, neglect or misconduct of the said Contractor; or by or on account of any claims or amounts recovered by infringement of any patent, trademark or copyright under any law, bylaw, ordinance, order or decree. The Commissioner may retain so much of the monies due the said Contractor under and by virtue of his contract as shall be considered necessary for the use of the State. In case no monies are due, the Contractor's surety shall be held until all such claims and actions thereon have been settled and suitable evidence to that effect furnished to the Commission.

> Any extension of time granted the Contractor in which to complete the contract shall not relieve him or his surety from this responsibility.
>
> It is not intended by any of the provisions of any part of the contract to create the public or any member thereof as a third party beneficiary hereunder, or to authorize anyone not a party to this contract to maintain a suit for personal injuries or property damage pursuant to the terms or provisions of the contract.

Deciding that the prior ruling on demurrer, made by another judge of the same court, had become "the law of the case", the trial judge would not allow defendants further to contest plaintiff's right to sue on the third party beneficiary theory.

Because we believe the main issue raised on cross-error to be dispositive of this appeal, we move directly to the question whether the plaintiff was entitled to sue as a third party beneficiary.

In attempting to sustain the theory that it is entitled to sue in contract as a third party beneficiary, rather than in tort for trespass, plaintiff primarily relies on § 107.12 in support of its contention that the promise of the contractor made to the Highway Department was made for its benefit, within the meaning of Code § 55-22.[1] Plaintiff says that it is entitled to recover for the value of a so-called "temporary construction easement" under the provisions of the second paragraph of § 107.12 and for restoration damages under the fourth paragraph of the section. In contending that the contracting parties intended to create obligations on the defendants for the benefit of others, including plaintiff, who were not

---

[1] § 55-22. **When person not a party, etc., may take or sue under instrument.** — An immediate estate or interest in or the benefit of a condition respecting any estate may be taken by a person under an instrument, although he be not a party thereto; and if a covenant or promise be made for the benefit, in whole or in part, of a person with whom it is not made, or with whom it is made jointly with others, such person, whether named in the instrument or not, may maintain in his own name any action thereon which he might maintain in case it had been made with him only and the consideration had moved from him to the party making such covenant or promise. In such action the covenantor or promisor shall be permitted to make all defenses he may have, not only against the covenantee or promisee, but against such beneficiary as well.

parties to the contract, plaintiff also points to numerous other sections of the contract documents contained in both the Road and Bridge Specifications and in certain "Special Provisions". These sections, many of which are of general application to every state road project, require the contractor, for example, to have available a sufficient number of flagmen to control traffic at the site, to keep all connections with private entrances in reasonably smooth condition for safe passage of traffic, to remove and replace mail and newspaper boxes, to obtain local material from pits and quarries only upon written permission of the property owner, to deposit waste material from the project on property only with the written approval of the owner, to store materials on private property only with the owner's written permission, to refrain from using any design, device, material or process covered by a patent or copyright unless permitted by a suitable legal agreement with the patentee or owner, to refrain from damaging trees, shrubs, vegetation, fences or structures outside the construction limits, to carefully remove and reset fences, to be responsible for straying of livestock through fence gaps left during construction, to repair or replace, at its own expense, any damage to railroad property caused by the contractor's operation, and to restore to their original condition any parking lot, sidewalk, or lawn disturbed as a result of new building service connections.

Contending that "the Highway Department did not consider the inclusion of these elaborate provisions as a mere farce," plaintiff argues that such requirements exacted of the contractor were "contract obligations for the respective indicated benefit of others," including the plaintiff. The plaintiff says that the State, in the creation of the public work, has required the contractor and its surety to do things, ancillary to actual performance of the contract, for the benefit of those "persons upon whose interests the performance of the contract might be expected to impinge as an unavoidable incident of creating a public improvement".

In response to defendants' contention that the third paragraph of § 107.14, in clear terms, prohibits the plaintiff from suing on the contract as a third party beneficiary, plaintiff contends the paragraph is "an indemnity provision inserted for the State's sole benefit as a disclaimer of *thereby* creating any third-party beneficiary rights *in the monies due the contractor withheld for the use of the State under § 107.14* as an indemnity measure and as an express negation of any inference that the State waived its sovereign immunity from suit for personal injuries or property

damage through or pursuant to any term or provision of the contract." (Emphasis in original.) It maintains that the "key word" in the third party beneficiary disclaimer is "hereunder". It says "hereunder" confines the operation of the disclaimer to § 107.14 only and prevents the disclaimer from applying to the contract as a whole. It urges that if the draftsman of the contract had meant for the disclaimer to apply broadly, the adverb "thereunder" would have been used, or he would have repeated the generic reference "any part of the contract". Plaintiff argues that "[u]nmistakably, the entire tenor of § 107.14 is exculpatory of the State; *not* of the contractor, . . ." (Emphasis in original.) We disagree with the plaintiff's argument.

 Under the third party beneficiary doctrine and Code § 55-22, *supra,* a person not a party to a contract may maintain an action thereon if a promise is made, in whole or in part, for his benefit. But the third party must clearly show that the contracting parties definitely intended the contract to confer a benefit upon him, *Valley Company* v. *Rolland,* 218 Va. 257, 259, 237 S.E.2d 120, 122 (1977); *Nelson & Co.* v. *Taylor Heights Development Corp.,* 207 Va. 386, 390-91, 150 S.E.2d 142, 146 (1966); incidental beneficiaries may not sue thereon. *Norfolk-Portsmouth Newspapers, Inc.* v. *Stott,* 208 Va. 228, 231, 156 S.E.2d 610, 612 (1967). *See generally* 2 *Williston on Contracts* § 356, at 823-28 (3d ed. 1959) defining the terms donee beneficiary, creditor beneficiary and incidental beneficiary.

 In the present case, we need look no further than the four corners of this contract to determine that a clear intent has been manifested by the Highway Department and the contractor *not* to benefit directly this plaintiff or any other member of the public. The language of the third paragraph of § 107.14, the section title being "Legal Relations and Responsibility to the Public", could hardly be more explicit in its terms and in its applicability to the entire contract. With the appropriate emphasis added, the paragraph reads: "It is not intended by *any* of the provisions of *any* part of *the* contract to create the public or *any* member thereof as a third party beneficiary hereunder, or to authorize *anyone* not a party to *this contract* to maintain a suit for . . . property damage pursuant to *the terms or provisions of the contract."* We are not persuaded by plaintiff's exercise in semantics relating to the use in the paragraph of "hereunder" rather than "thereunder" or "any part of the contract." Any doubt which can be seen to arise from

the use of "hereunder" in the first clause of the third paragraph is dispelled by the plain meaning of the second clause prohibiting "anyone not a party to *this contract*" from suing as a third party beneficiary for "property damage pursuant to the *terms or provisions of the contract.*" But for the third paragraph, plaintiff's argument based on the other enumerated provisions of the contract documents running to the apparent benefit of others not in privity with the contracting parties would have greater force. However, to look to other sections of the contract in order to determine the applicability of the third party beneficiary doctrine would disregard the very part of the contract which deals specifically in unambiguous terms with that subject and with the intention of the contracting parties.[2]

■ Finally, plaintiff argues, alternatively, that even if the contractor is not liable on a third party beneficiary theory, nevertheless, recovery may be had by plaintiff directly against the surety on the performance bond. Plaintiff maintains that the surety is obligated for the principal's failure to perform the contract obligations running to third parties, whether or not § 107.14 is interpreted as the contractor urges. We disagree.

A contractor's bond will not be enforced in favor of a person not a party thereto, or not designated therein, unless it appears from the provisions of the bond, or as a matter of construction of the contract and bond, that the bond was intended to inure to the benefit of such third person. *Tri-State Insurance Co.* v. *United States,* 340 F.2d 542 (8th Cir. 1965).

The condition of the performance bond in this case was in the conventional form and provided:

> NOW, THEREFORE, The condition of this obligation is such, that if the above bounded principal shall in all respects comply with the terms and conditions of said contract and his

---

[2]We also reject plaintiff's contention that a series of letters relating to this controversy, written during the period from August of 1973 to August of 1975, between plaintiff's counsel and representatives of the Highway Department, shows an "administrative interpretation" by the State of Virginia, which is "entitled to great weight", that the contract was made for plaintiff's direct benefit. The State's responses to plaintiff's demands for payment contained in those letters were nothing more than a consistent statement of a position by the Highway Department that plaintiff should look for reimbursement to the parties causing the alleged damage, and were not a recognition that plaintiff was a third party beneficiary of the contract.

obligations thereunder, including the 'Specifications, with amendments thereto,' 'Special Provisions,' 'Proposal,' and plans therein referred to and made a part thereof, and such alterations as may be made in said plans and specifications as therein provided for, and shall indemnify and save harmless the said 'Owner' against or from all costs, expenses, damages, injury or loss to which the said 'Owner' may be subjected by reason of any wrongdoing, misconduct, want of care or skill, negligence or default, including patent infringement, on the part of said 'Principal,' his agents or employees, in the execution or performance of said contract, including errors in plans furnished by the 'Principal,' and shall promptly pay all just claims for damages, for injury to property and for labor and material, incurred by said 'Principal' in or about the construction or improvement contracted for, then this obligation to be void; otherwise, to be and remain in full force and virtue in law.

According to the condition, the surety under this bond was bound to the Highway Department as "owner". The terms of the bond, reasonably construed in light of the contract provisions, do not contain a promise for plaintiff's benefit.

The reasons which justified allowing a direct action on the bond in *Aetna Casualty & Surety Co.* v. *Earle-Lansdell Co.*, 142 Va. 435, 129 S.E. 263 (1925), do not exist here. In that case, this court allowed a subcontractor, a supplier of labor and materials, to recover directly against the surety on a highway contractor's bond, the condition of which was identical to the present bond. The court noted that, as here, the bond was required by statute, now Code § 33.1-187,[3] and by the contract to guarantee the faithful perfor-

---

[3]**§ 33.1-187. Successful bidder; bond.** — The contract shall be let to the lowest responsible bidder for the particular work covered in the bid and the successful bidder shall enter into a bond, payable to the Commonwealth of Virginia, in the sum of one hundred per centum of the estimated cost of the work, which bond must be approved by the State Highway Commissioner and conditioned upon the faithful performance of the work in strict conformity with the plans and specifications for the same. The bond shall be kept on file in the office of the Commission.

mance of the public work. Rejecting the insurer's argument that its liability was measured by the statute which did not contemplate recovery by a subcontractor, the court reasoned, in part, that the requirement for a bond enhances the road contractor's credit and enables him to secure labor and purchase material more readily and at a better price than could be done without the credit. Thus, the court said, affording performance bond coverage to subcontractors effectuated the main purpose of the highway construction contract. Here, however, satisfaction of the damage claim made by this plaintiff is unrelated to the accomplishment of the main purpose of the contract, that is, the building of the road and, thus, plaintiff's claim is not covered and it has no direct action on the bond.

For these reasons, we hold that the trial court was wrong in permitting plaintiff to sue as a third party beneficiary and, thus, the damage award entered in favor of plaintiff on that theory was erroneous. Consequently, the final order appealed from will be annulled and final judgment will be entered here on the cross-error in favor of the defendants.

*Reversed and final judgment.*