# Richmond

BRUCE FORBES, ET AL.

V.

JOHN R. SCHAEFER, ET AL.

December 2, 1983.

Record No. 810025.

Present: All the Justices.

I. *Clinton Miller (Patrick M. McSweeney; Jack W. Burtch, Jr.; McSweeney, Stutts & Burtch, on briefs), for appellants.*

*Thomas V. Monahan (Kermit L. Racey; Hall, Monahan, Engle, Mahan & Mitchell; Racey & Racey, on brief), for appellees.*

No brief or argument for Henry C. Clark, Trustee, V. Stephen Bradshaw, Trustee, I. Clinton Miller, Trustee, and Bryce's Mountain Resort, Inc., appellees.

COMPTON, J., delivered the opinion of the Court.

In this land use controversy, we consider whether a parcel in a planned resort community is subject to certain restrictive covenants.

Bryce's Mountain, including its residential portion called Sky Bryce, is located in Shenandoah County at the village of Basye. The terrain varies from gently sloping to rugged, mountainous, hilly land. In 1965, Paul B. Brice conceived the idea to develop the area as a residential retirement community. The actual planning began in 1967, and appellee Bryce's Mountain Resort, Inc. was formed to develop the territory.

Eventually, the Resort developed 12 sections with approximately 3,186 lots, ranging from one-half acre to slightly more than one acre. Over the years, the Resort, and others, built ski slopes, a golf course, tennis courts, an olympic-sized swimming pool, an airport, condominiums containing multi-family dwelling units, a ski lodge, and a restaurant. At the time of the July 1980 hearing in this case, 2,762 residential lots had been sold, 340 homes had been built, and there were 31 families living there on a permanent basis.

The focus of this controversy is Section Six and a 7.35-acre parcel known as the "O'Mara tract." In 1970, lots 94 and 95 in Section Six were conveyed separately by the Resort to predecessors in title of appellees John R. Schaefer and Barbara L. Schaefer, his wife. The lots were approximately one-half acre, rectangular parcels. By deed recorded July 13, 1979, the Schaefers acquired lot 95, improved by a single-family dwelling. Lot 94 was conveyed by deed recorded November 15, 1979. The foregoing deeds expressly were made subject to a recorded "Declaration of Protective Covenants and Restrictions — Sky Bryce — Bryce's Mountain Resort, Inc." (hereinafter, the General Restrictions).

This dispute stems largely from varying interpretations of the following provisions of the General Restrictions:

"Bryce's Mountain Resort, Inc., . . . the owner of certain lands and premises . . . known as Bryce's Mountain Resort, hereby makes and executes the following declaration of protective covenants and restrictions as to that portion of said land which will be subdivided and sold to individual lot purchasers for the purpose of erecting private dwellings or residences thereon, known as SKY BRYCE, it being expressly understood and agreed by such lot purchasers that the said protective covenants and restrictions shall not apply to nor shall anything herein contained be construed as limiting or restricting Bryce's Mountain Resort, Inc. in its use of the portions of the said land now owned or hereafter acquired by said Bryce's Mountain Resort, Inc. that is not subdivided for sale to individual lot purchasers; for example, but not by way of limitation, Bryce's Mountain Resort, Inc. shall not be limited in its use or sale of such portions of the said land as may be used or useful for hotel, lodge, resort, recreational, entertainment or similar purposes nor shall these covenants and restrictions be deemed to prevent the erection and sale of multi-family units, town houses, condominiums or co-operative units, or the sale of lands or lots or portions of lots designed for such use in the overall master land plan to be adopted for the developmont [sic] of said SKY BRYCE and said Resort."

In 1971, the 7.35-acre parcel, which adjoins lot 95, was conveyed by the Resort to A. James O'Mara and Lois J. O'Mara, his wife. This deed expressly was "subject to" the General Restrictions, but also contained the following Special Covenants:

"As a part of the consideration for this conveyance, it is further agreed between the parties hereto as covenants running with the land herein conveyed:

(a) No development of said real estate, including site development, improvements, buildings, improvements or construction of any kind or nature, shall be made on said real estate until the proposed plans and specifications therefor

have been approved in writing by the Grantor herein, its successors or assigns.

(b) No more than twelve (12) dwelling units, whether apartments, single residence units, or multiple residence units, shall be placed or constructed on said real estate."

In 1978, after the O'Maras contracted to convey the parcel to appellants Bruce Forbes and Lois J. Forbes, his wife, an agreement was entered into between the Resort, the O'Maras, and the Forbeses affecting the 7.35 acres. Reciting that the Forbeses had requested elimination of the Special Covenants, the agreement, dated July 28 and recorded 16 months later, provided that the covenants were "terminated, released, null and void and of no further force and effect and that said covenants will no longer be any restriction whatsoever" upon the 7.35 acres. By deed recorded December 5, 1978, the O'Maras sold the parcel to Bruce Forbes. The realty was "conveyed subject to" the General Restrictions.

In October of 1979, upon application of the Forbeses, the County issued them a building permit to construct, on the 7.35-acre parcel, two three-story buildings of six residential units each for condominiums. The estimated cost of the improvements was $250,000. Construction began after issuance of the building permit, and this suit followed in December of 1979. At the time of trial, the contractor was in the process of putting roofs on the two buildings. Also at that time, the Forbeses had pending before the county authorities an application for a special use permit to construct on the subject property seven three-story buildings of six residential, condominium units each.

The Schaefers proceeded by declaratory judgment in equity, naming as defendants the Forbeses, the trustees under deeds of trust affecting the O'Mara tract, and the Resort. In an amended bill, the Schaefers alleged that their real estate, "as well as approximately 3,000 other lots within the same development and similarly situated," were conveyed specifically subject to the General Restrictions. Objecting to construction of multi-family dwellings on the subject parcel, they pointed to provisions of the restrictions that permit only one single-family, private, residential dwelling to be erected on any lot in Sky Bryce, that limit the height of the dwellings to two and one-half floors, and that prohibit renting or leasing any rooms in any dwelling for any period

of time, except pursuant to an agreement made by the owner with the Resort.

They alleged that the O'Mara tract is included within Section Six and that it was subdivided for sale to individual lot purchasers for the purpose of erecting private dwellings or residences on it. Referring to the deed from the Resort to the O'Maras, with the Special Covenants included, the Schaefers noted the release of the covenants and asserted that the covenants "which appeared to authorize multi-family units were legally and validly vacated by virtue of the aforesaid Release." They alleged that the Forbeses thus were bound by the General Restrictions. They also alleged that construction of multi-family units on the parcel would overburden the access road to the property, thereby creating a nuisance in further violation of the restrictions. In addition, the Schaefers alleged that the contemplated use of the multi-family dwellings under a "time-sharing device" constituted another violation of the restrictions.

In the prayer of their bill, the Schaefers sought a declaration whether the O'Mara tract was subject to the General Restrictions and, if so, whether the Forbeses were violating them. In addition, having also contended in the alternative that the release of the Special Covenants was invalid, the Schaefers contended that if the parcel in question was not subject to the General Restrictions, then its use nevertheless was restricted to 12 multi-family units. The Schaefers also sought entry of a permanent injunction against the Forbeses and their successors in interest if the court determined there had been a violation of any of the restrictions or covenants applicable to the subject property.

In their answer, the Forbeses denied the subject property was a part of Section Six, or that the 7.35-acre parcel had been subdivided for sale to individual lot purchasers for the purpose of erecting private dwellings on it. They denied their property was subject to the General Restrictions or that the Schaefers were entitled to the relief sought.

In a cross-bill against the Forbeses, the Resort contended the release of the Special Covenants was invalid for lack of consideration and for other errors of form. It joined the Schaefers in seeking to enjoin the Forbeses from violation of the General Restrictions.

Appellee Sky Bryce Association, Inc. was permitted to intervene and adopted the major portion of the Schaefers' bill and the

Resort's cross-bill. The association is composed of all lot owners at the resort.

Following a four-day ore tenus hearing, the chancellor declared that the Schaefers failed to establish "an express restrictive covenant with respect to the land of [the Forbeses] limiting them to the construction of less than 12 living units upon the said property." The trial court further declared that the Special Covenants, and the General Restrictions not in conflict with the Special Covenants, were applicable to the 7.35-acre tract, identifying eight of the 32 General Restrictions that were inapplicable to the parcel. Elaborating, the chancellor said: "Accordingly, [the Forbeses] with respect to that land are entitled to build thereon apartment houses, multiple family dwellings, condominiums, or other residences so long as they do not construct more than twelve (12) living units on the property as a whole." The decree defined a living unit as that combination of rooms and facilities ordinarily utilized for housing a single family.

The court further decreed that the release of the Special Covenants rendered the covenants unenforceable as between the Resort and the Forbeses. Thus, the court entered judgment in favor of the Forbeses on the cross-bill.

Finally, the court determined that no nuisance had been created and that the proposed use of the property upon a "time-sharing" basis did not violate any of the express or implied restrictive covenants. The request for an injunction was denied in the October 1980 final decree, from which we awarded the Forbeses this appeal.

The protracted litigation and a voluminous record have generated a number of issues that were debated on brief during the course of this appeal. Finally, during oral argument the issues were distilled; but even then the parties were unable to agree precisely upon just what the chancellor decided. As we deal with the maze, there are certain questions that have not been pursued to the end of the appellate process. We do not have before us at this stage the nuisance question, the "time-sharing" issue, or denial of the cross-bill.

The current position of the Forbeses is that the trial court decided the subject property initially, at inception of development, was not subject to any of the General Restrictions. They say the chancellor ruled that if the parcel later was sold and developed for

single-family detached dwellings, the restrictions would then apply. The Forbeses now do not object to the foregoing rulings.

The Forbeses do disagree, however, with what they say is the further ruling of the court. They contend the court held that the Special Covenants, subsequently released, became applicable to the subject property upon the conveyance from the Resort to the O'Maras, and that the Special Covenants bind the use of the property, together with the General Restrictions that are not in conflict with multi-family use. According to the Forbeses, this ruling allows a multi-family development limited to 12 dwelling units on the tract and extends the nonconflicting General Restrictions to the multi-family development. In effect, the Forbeses argue, the chancellor has created a unique set of restrictions applicable to the multi-family development not contemplated, agreed upon, or intended by any party in interest. The Forbeses contend such a result is contrary to the clear, unambiguous language of the General Restrictions. In sum, the Forbeses seek reversal of the judgment below and a declaration that the 7.35-acre tract is not subject to the General Restrictions or the Special Covenants.

The Schaefers and the Association, on the other hand, argue the issue is not whether the General Restrictions originally covered the tract. They contend the issue is whether the 7.35-acre tract was subjected to the restrictions and covenants by virtue of the explicit language in the deed to the O'Maras and in the deed to Forbes. They say that the chancellor did not find that the General Restrictions were inapplicable to the tract until it was sold for individual residential lots. Instead, they submit, the court found that the General Restrictions are applicable to the Forbeses' ownership, except as modified by the Special Covenants; they contend the "subject to" language in the O'Mara and Forbes deeds means what it says.

The Schaefers and the Association also contend that the parcel in question was a part of Section Six, that purchasers of lots in that section are third party beneficiaries of the General Restrictions and the Special Covenants, and that, as such, they have a right to enforce these restrictions. They ask for affirmance of the final decree.

At the outset, we must decide the precise content of the ruling below, because the parties disagree on the interpretation of the chancellor's decree. From a study of the final decree and the en-

tire record, we conclude the court made the following rulings pertinent to the issues we now confront.

First, the General Restrictions were not applicable to the parcel in question until the deed from the Resort to the O'Maras. The chancellor orally stated "in my opinion up until the O'Mara deed, [the] seven acre tract was not subject to any of the restrictive covenants." Second, upon recordation of the deed to the O'Maras, the Special Covenants became applicable to the property, as well as the General Restrictions, insofar as they are consistent with multifamily use of the property. This is clear from the chancellor's comments from the bench and the language of the final decree. Third, the Special Covenants, and the General Restrictions not in conflict with the Special Covenants, are presently applicable to the subject property, thus permitting the Forbeses to build on the land, in the language of the final decree, "apartment houses, multiple family dwellings, condominiums, or other residences so long as they do not construct more than twelve (12) living units on the property as a whole." Given those rulings of the trial court, we hold that the decree internally is inconsistent, contrary to the unambiguous provisions of the General Restrictions, and partially erroneous.

 Our decision proceeds from the basic premise that the General Restrictions were not applicable to the parcel in question at the inception of the development and did not operate upon the tract as the result of the conveyances to the O'Maras and Forbes. In plain and clear language, the General Restrictions expressly apply only "to that portion of said land which will be subdivided and sold to individual lot purchasers for the purpose of erecting private dwellings or residences thereon." According to the document, it was "expressly understood and agreed by such lot purchasers that the said [General Restrictions] shall not apply to nor shall anything herein contained be construed as limiting or restricting [the Resort] in its use of the portions of the said land now owned or hereafter acquired by said [Resort] that is not subdivided for sale to individual lot purchasers." The testimonial and documentary evidence is overwhelming that the 7.35-acre parcel has never been subdivided or sold to individual lot purchasers for the purpose of erecting private dwellings or residences on the land. For example, an October 1969 recorded plat of the subdivision prepared by James C. Wilkins, an experienced land surveyor, shows the undivided tract as "Possible Future Section." While the

parcel is within the perimeter boundaries of the development as a whole, it is not subdivided into lots. Wilkins testified that originally he had drawn lots into the parcel, but that the General Manager of the Resort, B. Dale Stancil, ordered him to erase the lot lines so the parcel would be available "for condominiums or townhouses or some other use." (Apparently, no "Master Plan" of the resort has ever been recorded.) Thus, the chancellor correctly decided that from the inception of development, the General Restrictions did not apply to the subject property.

Nevertheless, the court below, after implicitly deciding that the Special Covenants were released properly, and were unenforceable as between the Resort and the Forbeses, ruled the owners of residential lots could enforce the General Restrictions, as well as the Special Covenants, against the Forbeses. This latter holding is not compatible with the former, nor is it supported by the evidence or the applicable law.

The Schaefers and the Association dwell on the language of the O'Mara and Forbes deeds providing that the conveyances were "subject to" the General Restrictions and then argue that the restrictions thereby become applicable to the subject parcel. But, as the Forbeses point out, the language of the very instrument (the O'Mara deed) relied upon to show that the parcel is subject to the General Restrictions demonstrates positively that the parcel was not intended for individual, private residential use; the Special Covenants of the O'Mara deed specifically contemplated construction of multi-family dwellings. At the very least, under the provisions of those deeds, the restrictions would operate only if the parcel actually were subdivided for sale to individual lot owners, not the case here. While there is an implication in the deeds that the General Restrictions inhibit the use of the subject property, nonetheless a reading of the clear language of the restrictions manifestly demonstrates that they are inoperative. "Thus, under the circumstances of this case, what may be implied must give way to what is actually expressed." *Duvall* v. *Ford Leasing Development Corp.,* 220 Va. 36, 42, 255 S.E.2d 470, 473 (1979). And this conclusion comports with the elementary rule that valid covenants restricting the free use of land, although widely used, are not favored. Such covenants must be construed strictly. The party seeking to enforce such covenants has the burden of showing that they are applicable to the acts of which he complains. *Friedberg* v.

*Riverpoint Building Committee,* 218 Va. 659, 665, 239 S.E.2d 106, 110 (1977).

Finally, we reject the argument of the Schaefers and the Association that, notwithstanding the valid release of the Special Covenants, they nevertheless remain applicable to the 7.35 acres under a third party beneficiary theory. *See* Code § 55-22.* Apparently, the chancellor found that although the Special Covenants are unenforceable by the Resort, rights were created in unnamed third parties which the release to the Forbeses failed to extinguish.

Under a third party beneficiary theory, "the third party must show that the parties to the contract clearly and definitely intended it to confer a benefit upon him." *Professional Realty Corp. v. Bender,* 216 Va. 737, 739, 222 S.E.2d 810, 812 (1976). *Accord Kelly Health Care, Inc.* v. *Prudential Ins. Co. of America,* 226 Va. 376, 309 S.E.2d 305 (1983), decided today. This the lot owners failed to do.

The record shows that at the time of the O'Mara deed, in 1971, the Resort principals mainly were concerned with preventing competition which would affect their efforts to develop large multi-family buildings on the premises. According to the testimony, the twelve-unit limitation arbitrarily was selected at the time to prevent a "hotel or high-rise [from] going there," and also to assure that the construction on the parcel "would not be out of character with the single family lots." After the area substantially had been developed and the fear of competition subsided, the Resort subsequently rescinded the Special Restrictions in 1978. This clearly indicates that the Resort imposed the Special Covenants to protect its own interests, only incidentally benefitting the lot owners. Thus, we cannot say from this evidence that the lot owners have shown clearly "that the contracting parties definitely intended the contract to confer a benefit" upon them. *Richmond*

---

* Code § 55-22 provides:

An immediate estate or interest in or the benefit of a condition respecting any estate may be taken by a person under an instrument, although he be not a party thereto; and if a covenant or promise be made for the benefit, in whole or in part, of a person with whom it is not made, or with whom it is made jointly with others, such person, whether named in the instrument or not, may maintain in his own name any action thereon which he might maintain in case it had been made with him only and the consideration had moved from him to the party making such covenant or promise. In such action the covenantor or promisor shall be permitted to make all defenses he may have, not only against the covenantee or promisee, but against such beneficiary as well.

*Shopping Center, Inc.* v. *Wiley N. Jackson Co.,* 220 Va. 135, 142, 255 S.E.2d 518, 523 (1979). The lot owners, as incidental beneficiaries, are not entitled to enforce the provisions of such a contract. *See id.*

Consequently, the judgment below will be reversed and final judgment will be entered here. We will declare that as to the 7.35-acre parcel that is the subject of this dispute the "Declaration of Protective Covenants and Restrictions — Sky Bryce — Bryce's Mountain Resort, Inc.," is inoperative and covenants (a) and (b) in the deed from Bryce's Mountain Resort, Inc. to A. James O'Mara and Lois J. O'Mara, husband and wife, dated December 22, 1970, and recorded in the Clerk's Office of the Circuit Court of Shenandoah County in Deed Book 278, Page 706, are inapplicable.

*Reversed and final judgment.*