# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## C. C. BRANCH AND W. E. HANKINS V. RICHMOND COLD STORAGE, INCORPORATED.

### April 22, 1926.

1. APPEAL AND ERROR—*Suspension Bond Under Section 6338 of the Code of 1919—Appeal Bond Under Section 6351 of the Code of 1919—Bonds Distinguished.*—Between a suspending bond under section 6338 of the Code of 1919 and an appeal bond under section 6351 of the Code of 1919 there is this clear and fundamental difference: In the suspension bond liability for damages incurred by reason of the suspension is imposed, in an appeal bond, the liability imposed by the bond extends not only to the damages suffered but to the judgment itself.

2. APPEAL AND ERROR—*Suspension Bond Under Section 6338 of the Code of 1919—Appeal Bond Under Section 6351 of the Code of 1919—Bonds are Statutory—Obligation not Provided for by Statute.*—A suspension bond under section 6338 of the Code of 1919 and an appeal bond under section 6351 of the Code of 1919 are statutory bonds, and in them no obligation can be written not provided for by statute.

3. APPEAL AND ERROR—*Suspension Bond Under Section 6338 of the Code of 1919—Conditioned to Pay the Judgment—Case at Bar.*—In the instant case, an order suspending execution for a period of ninety days to allow for an application for an appeal, provided that it should not take effect until bond with approved security was executed conditioned to pay the judgment itself and costs. The court making this order had power to take a suspending bond under section 6338 of the Code of 1919, and to make provision therefor in its order. The conditions to be imposed were statutory and could not be exceeded. It could no more require the obligors to pay the judgment than it could have required them to pay it with a ten per cent penalty added or with any other added extraneous obligation, reasonable or fantastic. The conditions so imposed beyond what the law requires are void.

4. BONDS—*Statutory Bonds—Conditions not Provided for by the Statute—General Rule.*—The general rule is to hold statutory fiduciary, judicial, and official bonds void as to any condition imposed beyond what law requires, and good so far as it is in conformity with the act.

5. BONDS—*Appeal Bonds—Suspension Bonds—Sections 6338 and 6351 of the Code of 1919—No Appeal Bond—Case at Bar.*—In the instant case a bond recited in effect that there was a pending appeal and that the bond should be void if the appellant prevailed, but should remain in effect if the judgment appealed from should be confirmed on appeal and that in such a contingency the surety on the bond together with its maker should pay said judgment. So the bond as written is an appeal bond and not a suspending bond. No appeal was pending and not even a petition for a writ of error had been presented.

 *Held:* That as an appeal bond it was unquestionably void. An appeal bond can be taken only after a writ of error has been granted. There was a total want of consideration.

6. SEALS AND SEALED INSTRUMENTS—*Seal Importing a Consideration—Law and Equity.*—Although a seal imports a consideration of common law, this is not the rule in equity.

7. JUDGMENTS AND DECREES—*Relief in Equity.*—Notwithstanding statutes which prohibited the court of chancery from reviewing judgments rendered by the courts of law, the chancellor gave relief, where it was demanded by equity and good conscience, against the operation of such judgments. He avoided the express prohibitory language of the statutes by not assuming to act directly upon the judgment itself, but upon the parties personally, by restraining the one who had recovered the judgment from taking or prosecuting any measures for its enforcement, and even by compelling him to restore the property which he had acquired by its means.

8. APPEAL AND ERROR—*Suspension Bond Under Section 6338 of the Code of 1919—Appeal Bond Under Section 6351 of the Code of 1919—Appeal Bond Intended for a Suspension Bond—Case at Bar.*—In the instant case on the motion of appellant execution on a judgment was suspended for ninety days in order to allow him to apply for an appeal, the suspension not to become effective until appellant executed a bond with surety, conditioned to pay the judgment and all proper costs by reason of the appeal. No appeal was pending and not even a petition for a writ of error had been presented. The bond required by this order was executed by appellant with his surety. The bond as written could not be enforced, neither as a statutory bond nor a common law bond. As a matter of fact, everybody interested intended the execution of a suspending bond and if possible the court should so treat it; and to treat it as a suspending bond would be to the interest of the obligee for if it is not a suspending bond it is nothing. If, however, the bond is to be rewritten into a suspending bond, there should be written into it only the usual obligations of such a bond. It must be construed as written or fairly changed. A promise to pay the judgment is a promise never contemplated by the statute that gives being to such bonds.

9. Rescission, Reformation and Cancellation—*Reformation—Mistake of Law.*—While it is laid down that a mere mistake of law, stripped of all other circumstances, constitutes no ground for the reformation of written contracts, yet the rule that an admitted or clearly established misapprehension of the law does create a basis for the interference of courts of equity resting on discretion, and to be exercised only in the most unquestionable and flagrant cases, is certainly more in consonance with the best-considered and best-reasoned cases upon the point, both English and American.

10. Rescission, Reformation and Cancellation—*Reformation—Mistake of Law.*—Where an instrument is drawn and executed which professes or is intended to carry into execution an agreement previously entered into, but which by mistake of the draughtsman, either as to fact or law, does not fulfil, or which violates the manifest intention of the parties to the agreement, equity will correct the mistake so as to produce a conformity of the instrument to the agreement.

11. Appeal and Error—*Suspension Bond Under Section 6338 of the Code of 1919—Surplusage.*—Penalties in a suspension bond under section 6338 of the Code of 1919, in excess of the authority of the court to exact, such as a promise to pay or satisfy the judgment in case the judgment shall be affirmed, will be treated as surplusage; and the bond with such penalties eliminated will be enforced as a suspending bond.

12. Appeal and Error—*Suspending Bond Under Section 6338 of the Code of 1919—Provision for Payment of Judgment without Condemnation—Case at Bar.*—In the instant case, all the parties interested intended the execution of a suspending bond under section 6338 of the Code of 1919, and a provision in the bond for the payment of the judgment in case the judgment was affirmed was without consideration. The appellant under the statute (section 6338 of the Code of 1919) was entitled to a suspension of execution on the judgment when he tendered a proper bond conditioned for the payment of damages and he was given no new right because the bond in addition provided that he should pay the judgment.

13. Bonds—*Void Surplus Stipulation—Statutory Bonds—Seals.*—n in-A dependent void surplus stipulation in a statutory bond will be disregarded and not enforced merely because it is incorporated into a bond under seal.

Appeal from a decree of the Hustings Court, Part II, of the city of Richmond. Decree for defendant. Complainants appeal.

*Reversed and remanded.*

The opinion states the case.

*Plummer & Bohannan,* for the plaintiffs in error.

*Bethel & Willaims* and *M. J. Fulton,* for the defendant in error.

Holt, J., delivered the opinion of the court.

In an action at law lately pending in the Hustings Court, Part II, of the city of Richmond, the Richmond Cold Storage, Incorporated, recovered a judgment against petitioner, C. C. Branch, for the sum of fifteen thousand six hundred and thirty-six dollars ($15,636.-00) with interest and costs. The verdict of the jury in that action bears date November 20, 1922. A motion for a new trial was argued in February, 1923. The order overruling this motion and awarding judgment was entered on June 20, 1923.

Thereupon, on the motion, and at the request of C. C. Branch, execution on the above judgment was suspended for a period of ninety days in order to allow him to apply for an appeal, the suspension not to become effective "unless C. C. Branch, or someone for him, should within fifteen days from the entry of the order execute a bond in the penalty of $18,000.00 with surety to be approved by the clerk of the court and conditioned to pay the above judgment and all proper costs by reason of such appeal." The bond required by this order was executed by Branch with W. E. Hankins as his surety and is as follows:

"Know all men by these presents:

"That we, C. C. Branch with W. E. Hankins, surety, are held and firmly bound unto Richmond Cold Storage,

Incorporated, in the just and full sum of $18,000.00 to be paid to the said Richmond Cold Storage, Incorporated, his certain attorneys, his executors, administrators, or assigns for the payment whereof, well and truly to be made we bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents.

"Sealed with our seals this 3rd day of July, 1923.

"The condition of the above obligation is such that whereas at a Hustings Court, Part II, held for the city of Richmond, Va., on the 20th day of November, 1922, in an action of notice of motion for judgment depending in the said court the above named Richmond Cold Storage, Incorporated, plaintiff, and the above named C. C. Branch, defendant, it was considered by the said court that the plaintiff should recover against the defendant, C. C. Branch, the sum of fifteen thousand six hundred and thirty-six dollars, with interest from the 20th day of November, 1922, until paid and his costs by him in this behalf expended.

"From which said judgment the said C. C. Branch hath appealed to the Supreme Court of Appeals of the State of Virginia. If, therefore, the said C. C. Branch shall prosecute the said appeal with effect, or pay and satisfy the judgment aforesaid, and all such costs and damages as shall be awarded against him in case the said judgment shall be affirmed, then this obligation to be void, else to remain in full force and virtue. The obligation herein named hereby waive all benefit of their homestead exemption as to this obligation.

"C. C. BRANCH (Seal)
"W. E. HANKINS (Seal)."

After this bond was given an application for a writ of error was presented to the Supreme Court of Appeals

of Virginia and was refused. On December 28, 1923, suit was brought on it. On January 2, 1924, a bill of injunction against its prosecution was presented to the judge of the Hustings Court, Part II, of the city of Richmond, and injunction denied. On January 9, 1924, this bill was presented to Honorable Robert R. Prentis of the Supreme Court of Appeals and injunction granted. The injunction bond required was executed on January 12, 1924. On March 11, 1924, defendant's demurrer and answer were filed. Depositions were taken and the cause submitted. By decree of November 22, 1924, this injunction was dissolved and the bill dismissed. From that decree an appeal was taken, supersedeas was awarded and so this litigation is now before us.

Mr. Branch discussed the conditions of a suspending bond with his counsel. He had never executed one. The matter was gone over and the statute providing therefor was read and explained to him. It was necessary that he secure a satisfactory surety and for that purpose went to see his friend, Mr. W. E. Hankins, who was a stranger to the litigation and had no interest in it. Hankins knew no more about suspending bonds than Branch did, so together they went to consult counsel to find out just what would be the nature and extent of their obligation and were told:

"Q. Please state whether or not any explanation was made by Mr. Mathews, as counsel for Mr. Branch, with reference to the kind of bond which the law required to be given in order to obtain the suspension which Mr. Branch desired?

"A. Mr. Mathews proceeded to tell me what he has stated in his evidence, and he got the statute book and read the statute to me, stating that the law required that a suspending bond be given covering any damages

that might accrue to the judgment creditor during the period of suspension, by reason of the condition of the person taking the appeal becoming worse than it was at the time the bond was executed, and if so, his bondsman would be liable for that condition; otherwise, there would be no liability attaching to the bondsman."

When the bond was signed there were present Mr. Hankins, Mr. Branch, Mr. Mathews and the court clerk. Mr. Branch did not read it at all. Mr. Hankins read it casually.

The issue presented is narrow. For the plaintiffs it is said that at the most it is but a simple suspending bond and must be construed as such and that it carries with it in no event greater liability than is written by statute into bonds of this character.

The defendant's claim is that it is an obligation deliberately executed, unambiguous on its face and must be enforced as written. It "stands here for law * * * * and craves the penalty and forfeit of the bond."

In ordinary appellate procedure in this State statutory provision is made for two bonds. Section 6338 of the Code deals with suspending bonds and provides in substance that any person who desires to may apply to the Supreme Court of Appeals or to one of its judges in vacation for a writ of error and supersedeas. Time to do this is given by the trial court which must enter an order suspending execution of the judgment to take effect "when such person shall give bond, with surety, before the clerk of said court, in such penalty as the court or judge may require, with a condition reciting such judgment, decree, or order, and the intention of said person to present such petition, and providing for the payment of all such damages as may accrue to any person by reason of the said suspension, in case a supersedeas to such judgment, decree, or order, should not be allowed."

When execution has been thus suspended application in due course is presented to the Supreme Court of Appeals, or to one of its judges, for a writ of error, which may be granted or refused. If refused proceedings may be taken to recover all damages that may have been suffered by reason of the suspension. Should a writ of error be awarded the petitioner is ordinarily required to execute an appeal bond "with condition, if a supersedeas be awarded, to perform and satisfy the judgment, decree or order, or the part thereof, proceedings on which are stayed, in case the said judgment, decree, or such part be affirmed, or the appeal, writ of error or supersedeas be dismissed, and also to pay all damages, costs and fees which may be awarded against or incurred by the appellants or petitioners, in the appellate court, and all actual damages incurred in consequence of the supersedeas." See section 6351 of the Code.

[1] Between these bonds there is this clear cut and fundamental difference: In the first, liability for damages incurred by reason of the suspension is imposed, in the last, liability extends not only to the damages suffered, but to the judgment itself.

[2] These bonds are statutory and in them no obligation can be written not provided for by statute.

[3, 4] In the case in judgment it is true that the order which suspended execution provided that it should not take effect until bond with approved security was executed conditioned to pay the judgment itself and costs. The court making this order had power to take a suspending bond to make provision therefor in its order. The conditions to be imposed were statutory and could not be exceeded. It could no more require the obligors to pay the judgment than it could have required them to pay it with a ten per cent penalty added or with any other added extraneous obligation,

reasonable or fantastic. The conditions so imposed beyond what the law requires are void. *Aetna Casualty Company* v. *Earle-Lansdell Company*, 142 Va. 435, 129 S. E. 263, section 2 of the syllabus of this case in that publication is: "The general rule is to hold statutory fiduciary, judicial, and official bonds void as to any condition imposed beyond what law requires, and good so far as it is in conformity with the act, but contractor's bonds for public works may contain any conditions not prohibited by statute."

[5, 6] The bond of July 3, 1923, recites that "C. C. Branch hath appealed to the Supreme Court of Appeals for the State of Virginia." Branch had not appealed, no such appeal was pending as the bond recites and not even a petition for writ of error had been presented. It then goes on to provide "if, therefore, the said C. C. Branch shall prosecute said appeal with effect (successfully) or pay and satisfy the judgment aforesaid (if unsuccessfully) and all costs and damages as shall be awarded against him in case the said judgment shall be affirmed, then this obligation to be void, else to remain in full force and effect." That is to say, we have a statement here to the effect that there was a pending appeal and that the bond should be void if the appellant prevailed, but should remain in effect if the judgment appealed from should be confirmed on appeal and that in such a contingency the surety on the bond, together with its maker, should pay said judgment, and so the bond as written is an appeal bond and not a suspending bond.

As an appeal bond it is unquestionably void. Such a bond can be taken only after a writ of error has been granted. This had not been done and in fact was never done. Had it suffered from no other infirmity there was total want of consideration. It is an appeal

bond on its face and there was no appeal. We do not lose sight of the fact that a seal imports consideration at common law. This is not the rule in equity.

[7] "Notwithstanding statutes which prohibited the court of chancery from reviewing judgments rendered by the courts of law, the chancellor gave relief, where it was demanded by equity and good conscience, against the operation of such judgments. He avoided the express prohibitory language of the statutes by not assuming to act directly upon the judgment itself, but upon the parties personally, by restraining the one who had recovered the judgment from taking or prosecuting any measures for its enforcement, and even by compelling him to restore the property which he had acquired by its means. There is no higher example of the equity jurisdiction than this, nor one which more directly interferes with the administration of the law, since the legal right controverted and overthrown by chancery no longer existed in the form of an abstract rule, but had been established in a concrete form as the right existing between the parties." Pomeroy's Equity Jur., sections 51 and 383.

[8] From this it follows that the bond as written can be enforced neither as a statutory bond nor as a common law one. The clerk who drafted it must have intended to prepare a suspending bond and those who signed it certainly thought they were signing one and it was thereafter dealt with as such. The Richmond Cold Storage Company so far as it was represented at all acted by and through the clerk.

As a matter of fact, everybody interested intended the execution of a suspending bond and if possible we should so treat it. It is to the interest of the defendant here that we do this for if it be not a suspending bond it is nothing. But if it is to be reformed to conform to

the true intent and purpose of the parties it must be equitably reformed. If it is to be re-written into a suspending bond there should be written into it only the usual obligations of such a bond. It must be construed as written or fairly changed. A promise to pay the judgment is a promise never contemplated by the statute that gives being to such bonds.

If we treat it as a suspending bond regular in every respect except that it is conditioned to pay not only damages, but the judgment itself, as well, the effect would be the same. Looking at it from that angle, *Griswold* v. *Hazard,* 141 U. S. 260, 11 S. Ct. 972, 999, 35 L. Ed. 678, is an instructive case. That opinion was written by Mr. Justice Harlan and was critically and ably discussed in *Medical Society* v. *Gilbreth,* 208 Fed. 899. Judge Conner in his analysis said: "In *Griswold* v. *Hazard,* 141 U. S. 261, 11 Sup. Ct. 972, 999, 35 L. Ed. 678, it appeared that a writ of *ne exeat* had been served upon one Durant at the suit of Hazard. He was arrested by the sheriff and confined in jail. At the request of a mutual friend, Griswold went to the jail for the purpose of aiding in securing Durant's release by giving bond. He met, at the jail, counsel of Hazard and also of Durant. There was a discussion between them respecting the character, and an agreement made as to the terms, of the bond to be given. The parties thereafter met, and a bond was executed by the terms of which Griswold was made liable for the performance of such judgment as might be rendered in the suit against Durant." Griswold in signing the bond supposed that he became responsible only for Durant's appearance. As a matter of fact, he became responsible for any judgment the court might see fit to enter, just as here Hankins supposed in signing the bond that he became liable for damages, when its provision was that he should pay the judgment.

[9] In the *Griswold Case, supra,* Mr. Justice Harlan said:

"The instrument does not express the thought and intention which the parties had at the time of its execution. And this mistake was attended by circumstances that render it inequitable for the obligees of the bond to take advantage of it. The instrument was drawn by one of Hazard's attorneys and was presented and accepted as embodying the agreement previously reached. * * * A court of equity ought not to allow that mistake, satisfactorily established, and thus caused, to stand uncorrected, and thereby subject a surety to liability he did not intend to assume and which, according to the decided preponderance of the evidence, there was, at the time, no purpose to impose upon him. While it is laid down that a mere mistake of law, stripped of all other circumstances, constitutes no ground for the reformation of written contracts, yet the rule that an admitted or clearly established misapprehension of the law does create a basis for the interference of courts of equity resting on discretion, and to be exercised only in the most unquestionable and flagrant cases, is certainly more in consonance with the best-considered and best-reasoned cases upon the point, both English and American."

The inherent probabilities of that case are stressed by the justice who said:

"The conclusion reached upon this branch of the case is the only one consistent with fair dealing towards those who were willing to become sureties for the appearance of Durant. * * * If the attorneys of Hazard intended to obtain, by means of a bond, more than he was entitled to, by such bond as the writ of *ne exeat* called for, and more than the court would ordinarily have given them upon Durant's application to dis-

charge the writ; if they intended to secure a bond that would make Griswold personally liable within the penal sum, for any money decree passed against Durant— then a fraud was perpetrated upon him which entitled him to relief. * * * It must be assumed that Hazard's attorneys knew that he signed the bond in the belief that, pursuant to the previous understanding, it was one to secure Durant's appearance, nothing more, and yet they failed to inform him, at the time, that it was drawn so as to impose upon him a much larger responsibility. Their silence upon the question was, under the circumstances, equivalent to a direct affirmation that the bond meant what Griswold supposed it did."

Inherent probabilities may be stressed here with equal propriety. It is not readily to be believed that Hankins intended to bind himself to pay this judgment in the event an appeal was not allowed merely because its execution had been suspended for ninety days.

The plaintiffs here are entirely willing that this bond be rewritten so as to conform to the ordinary requirements of a suspending bond. They are willing to pay such damages as have been incurred, but not the judgment.

[10] In *Beach* v. *Bellwood,* 104 Va. 170, 51 S. E. 184, Judge Cardwell says:

"In section 866, Beach on Mod. Law of Con., the author says: 'When an agreement is made and reduced to writing, but, through mistake, inadvertance, or fraud, the writing fails to express correctly the contract really made, a court of equity will reform the instrument in conformity with the real intention of the parties. Accordingly, where an instrument is drawn and executed which professes or is intended to carry into execution an agreement previously entered into, but which by

mistake of the draughtsman, either as to fact or law, does not fulfil, or which violates the manifest intention of the parties to the agreement, equity will correct the mistake so as to produce a conformity of the instrument to the agreement.' See also to same effect Kerr on Fraud and Mistake, page 418."

[11] Those penalities in excess of the authority of the court to exact will be treated as surplusage. The bond with them eliminated and thus reformed will be enforced. This is ancient law in Virginia. See *Scott* v. *Hornsby*, 1 Call (5 Va.) 41 (1797), and an unbroken line of authority whose latest statement is written into *Aetna Casualty Company* v. *Earle-Lansdell Company*, *supra*, where Judge Prentis said: "This was followed by *Yost* v. *Ramey*, 103 Va. 117, 48 S. E. 862, where the surety on an executor's bond denied his liability, because the bond contained a condition waiving the right to settle with any funds other than legal tender of the United States, which condition was not then required by any statute, while instead thereof the bond should have contained a waiver of any claim to settle in coupons of the State of Virginia, this being the condition at that time prescribed by statute. The court held the surety liable upon the ground that the unauthorized condition was mere surplusage, and cited the two previous cases to which we have referred with approval."

[12] Moreover, that part of the bond providing for payment of the judgment is without consideration. The plaintiff under the statute was entitled to a suspension of execution on the judgment when he tendered a proper bond conditioned for the payment of damages and he was given no new right because the bond in addition provided that he should pay the judgment.

[13] We have seen that a seal imports consideration at common law but that equity will in proper cases dis-

regard this presumption. An independent void surplus stipulation will be disregarded and not enforced merely because it is incorporated into a bond under seal. If this were not true then in *Yost* v. *Ramey*, 103 Va. 117, 48 S. E. 862, and in all that line of cases, the objectionable provisions eliminated by the courts might have remained because there were valid considerations to support them.

For reasons stated the decree of the court below must be reversed and the bond of July 3, 1923, reformed to conform to the suspending bond required by section 6338 of the Code, and this cause remanded for further consideration to the end that the liabilities, if any, which may be ascertained under the bond as thus reformed may be assessed.

*Reversed and remanded.*