E.M. HOPKINS

V.

H. LEE GRIFFIN, ET AL.

Record No. 900837

ELBERT JAY SPRUILL, ET AL.

V.

H. LEE GRIFFIN, ET AL.

Record No. 900869

March 1, 1991

Present: All the Justices

*Charles K. Watson, Jr. (Patrick & Watson,* on briefs), for appellant. (Record No. 900837)

*Charles W. Beddow (Beddow, Marley, Burgess & Murphey,* on brief), for appellees. (Record No. 900837)

*William H. Hurd* for appellant. (Record No. 900869)

*Charles W. Beddow (Beddow, Marley, Burgess & Murphey,* on brief), for appellees. (Record No. 900869)

JUSTICE WHITING delivered the opinion of the Court.

In this declaratory judgment case, the principal issue is whether one party to a contract under seal must show that the other parties' promises were supported by consideration.

On August 28, 1975, Edward McAllister Hopkins and Russell L. Leonard, two real estate agents, together with five other persons, formed a partnership known as Mid-City Properties for the purpose of developing a shopping center in Chesterfield County. Each of the original partners held an equal interest, which was 14.2857% of the whole. R. Garland Dodd, J.W. Sanderson, H. Lee Griffin, Plato G. Eliades, and Dorothy Branch now own the original interests of the seven partners.

Paragraph four of the original partnership agreement provided that the seven partners were equally responsible for capital contributions and losses and that they would share profits and losses equally. Paragraph nine of the partnership agreement gave the partners a 60-day preemptive right to purchase the interest of a deceased or withdrawing partner at its pro rata share of the fair market value of the partnership real estate as of the date of the withdrawing partner's death or notice of election to withdraw.

On September 23, 1977, paragraph four was amended to vest Hopkins and Leonard with additional five percent interests in the partnership income and net assets on distribution, but subjected them to an additional five percent of the partnership losses. The amendment, however, provided that although the owners would continue to contribute the needed capital in equal shares, those contributions would be credited in accordance with the following adjusted partnership interests: 17.857142% each for Hopkins and Leonard, and 12.857142% each for the remaining five partners. Just above the seven partners' signatures was the following language: "IN WITNESS WHEREOF, the parties have hereunto set their hands and seals."

On November 15, 1978, Leonard sold "12.857142% of his total interest of 17.857142%" to Eliades, and the following month he sold "the final five percent (5%) of his interest in said partnership" to Hopkins. The sale to Hopkins recited that the partners agreed that Hopkins "is now a partner to the extent of a total of 22.857142%." On November 26, 1979, Hopkins sold to Griffin "his regular share of 12.857142% of his total interest of 22.857142%, thereby retaining the special 10% interest." These three sales were reflected in amendments to the partnership agreement, each of which was signed under seal by all partners.

On January 6, 1981, Hopkins signed an agreement transferring his two "(5) percent non-funding interest[s]" to Elbert Jay Spruill and Patricia Smith Spruill (collectively Spruill). Before signing the agreement, Hopkins met with the remaining partners and advised them of his desire to sell his "ten percent interest." According to Hopkins, one partner moved that "they purchase that ten percent and I don't think it was ever voted on, but they decided they weren't interested in purchasing it." Hopkins also testified that when he advised Eliades that he had an offer for the share and a deposit, Eliades told him to "take it and run."

On the other hand, the only partners who testified contended that the two five percent interests of Hopkins and Leonard were invalid because Hopkins and Leonard had not performed the work that was the consideration for issuance of those interests. Upon the partnership's refusal to recognize that Hopkins had a 10% partnership interest, Spruill brought this declaratory judgment suit against the partners and Hopkins, seeking to establish the validity of Hopkins' 10% interest and its sale to Spruill, or, if either be invalid, to obtain a money judgment against Hopkins for the amounts paid for his alleged partnership interest.

After hearing evidence and argument, the trial court held that there was no consideration for the agreement to vest the two additional five percent interests in Hopkins and Leonard and, therefore, that Hopkins had nothing he could sell to Spruill. The court further held that, even if Hopkins had acquired the two five percent partnership interests, he had not validly transferred those interests to Spruill because he had not first offered the remaining partners their preemptive rights to purchase those interests. The court reserved decision on the issue whether the owner of this 10% interest was obligated to share in certain capital contributions. Spruill and Hopkins appeal the court's adverse interlocutory decree.

First, we consider the contention that there was no consideration for issuance of the two five percent interests to Hopkins and Leonard. Because the contract is under seal, we need not decide whether there was an actual consideration for the transfer. We do not accept the partners' premise that "in equity" a court always can inquire into the question of consideration even if the contract is under seal. "In a contract under seal, a valuable consideration *is presumed* from the *solemnity of the instrument*, as a matter of public policy and for the sake of peace, and presumed

*conclusively*, no proof to the contrary being admitted either at law or in equity so far as the parties themselves are concerned." *Watkins* v. *Robertson*, 105 Va. 269, 279, 54 S.E. 33, 36 (1906) (citation omitted; emphasis in original). We cited *Watkins* and relied upon this principle in the equity suits of *Mitchell* v. *Wayave*, 185 Va. 679, 688, 40 S.E.2d 284, 288 (1946), and *Parker* v. *Murphy*, 152 Va. 173, 191, 146 S.E. 254, 260 (1929).

■ *Norris* v. *Barbour*, 188 Va. 723, 51 S.E.2d 334 (1949), did not modify *Watkins*, as contended by the partners. In *Norris*, we permitted a widow to show a lack of consideration for her husband's execution of a bond under seal that would have reduced her distributive rights in her husband's estate by obligating her husband's estate to pay a sum of money to fund a trust to support his brothers and sisters. *Id.* at 741, 51 S.E.2d at 341. We cited and reaffirmed *Watkins* and its progeny, but noted that the rule did not apply in *Norris* because the widow was not a party to the bond and the bond was a fraud on her distributive rights in her deceased husband's estate. *Id.* at 737, 740-41, 51 S.E.2d at 339-40, 341. Similarly, in *Cooper* v. *Gregory*, 191 Va. 24, 31, 60 S.E.2d 50, 53 (1950), litigants who were neither parties to a sealed instrument, nor their successors in title, were permitted to show a lack of consideration.

■ The partners rely upon *Branch* v. *Richmond Cold Storage*, 146 Va. 680, 693-94, 132 S.E. 848, 852 (1926). There, we said that "a seal imports consideration at common law but . . . equity will in proper cases disregard this presumption." *Branch* cited no Virginia authority to support the statement, and we have never cited *Branch* for this proposition. Indeed, after *Branch*, we decided *Norris, Mitchell, Parker*, and *Wilson* v. *Butt*, 168 Va. 259, 269, 190 S.E. 260, 264 (1937), applying the contrary principle. Accordingly, to the extent that *Branch* is at variance with *Watkins* and its progeny, it is expressly overruled.

■ Although Griffin, Eliades, and Branch were not parties to the instrument creating the two five percent interests, they claim as successors in title to parties who were bound by the instrument. Therefore, they are subject to its terms. *Selden* v. *Williams*, 108 Va. 542, 550, 62 S.E. 380, 382 (1908) (assignee of judgment subject to all defenses judgment debtor could make against assignor).

■ Finally, the partners argue that even if Hopkins had a 10% partnership interest, his sale to Spruill was not valid because the evidence does not indicate that he offered the partners their

60-day preemptive right to purchase the stock. However, any tender of that right would have been a vain act because the partners denied that Hopkins had a 10% partnership interest. Under these circumstances Hopkins was not obliged to offer them the right to purchase his 10% interest because "[t]he law does not require one to do a vain thing." *Reiber* v. *James M. Duncan, Jr., & Assocs.*, 206 Va. 657, 662, 145 S.E.2d 157, 161 (1965) (purchaser not required to tender payment after owner advised he would not consummate sale).

Accordingly, we will reverse the interlocutory decree of the trial court. We will also remand the case for entry of a declaratory judgment in conformity with this opinion and for the necessary further proceedings.

*Reversed and remanded.*