# DANIEL B. DRYSDALE, T/A DRYSDALE EYE CENTER

## v.

# BARCO ASSOCIATES

Record No. 930573

April 15, 1994

Present: All the Justices

*Frank K. Friedman (William B. Poff; Victor O. Cardwell; Woods, Rogers & Hazlegrove,* on briefs), for appellant.
*Warren S. Neily, Jr.,* for appellee.

CHIEF JUSTICE CARRICO delivered the opinion of the Court.

This appeal involves the provisions of a lease dated January 10, 1987, between Professional Associates (Professional), as lessor, and Daniel Brian Drysdale (Drysdale), as lessee. Barco Associates (Barco), the appellee here, is the successor in interest to Professional.

On five civil warrants brought by Barco and removed from general district court by Drysdale, the trial court entered judgment in favor of Barco for $10,966.70. This amount represented rental for five months of 1991 in excess of the amount Drysdale claimed was due. We awarded Drysdale this appeal and will reverse.

The 1987 lease replaced an earlier contract between Drysdale and Professional dated March 1, 1978. The 1978 lease contained this provision relating to termination and extension of Drysdale's tenancy:

The term of this lease shall be five years, commencing on March 1, 1978, and terminating on Feb. 28, 1983, unless *sooner terminated as herein provided. This lease shall be deemed to be extended from the said termination for one (1) year until Feb. 28, 1984, and thereafter from year to year unless* and until either of the parties hereto notifies the other in writing, at least three (3) months prior to the expiration of this lease or of one of the

subsequent annual renewal periods, of the desire of the party giving such notice to terminate the lease as of the expiration of the then current term.

(Emphasis added.) The 1978 lease was extended from year-to-year according to its terms until January 10, 1987, when a new lease was executed by Professional and Drysdale to provide the latter more space at a corresponding increase in rental.

In the 1987 version of the termination and extension provision, the language relating to deemed extensions, italicized above, was omitted, with the result that the provision reads:

The term of this lease shall be three years, commencing on January 1, 1987, and terminating on December 31, 1989, unless and until either of the parties hereto notifies the other in writing, at least three (3) months prior to the expiration of this lease of the desire of the party giving such notice to terminate the lease as of the expiration of the current term.

When the termination date of December 31, 1989, arrived, no notice of termination had been given, and Drysdale continued in occupancy, paying the rental required by the 1987 lease. Then in August 1990, three of the partners in Professional formed Barco Associates and purchased the building in which Drysdale was a tenant. Because no notice of termination was given at least three months prior to the end of 1990, it was Drysdale's "understanding . . . that [he] had a lease renewed until the end of the calendar year '91."

However, on November 1, 1990, Barco notified Drysdale that "the month to month Lease for the premises" was "terminated as of December 1, 1990" and that if Drysdale wished to remain beyond the latter date he would have to execute a new lease calling for an increase in rent from $9.00 to $16.50 per square foot. Drysdale took the position that because Barco had not given him notice of termination at least three months prior to December 31, 1990, the 1987 lease had been extended through 1991. Accordingly, Drysdale refused to sign a new lease or to pay the increased rental.

The trial court held that "there was a mutual mistake in the wording" of the termination provision of the 1987 lease and that the omission of the language providing for deemed extensions resulted from a scrivener's error of which neither Professional nor Drysdale was "cognizant." However, the court ruled that Barco's notice to Drysdale of November 1, 1990, was sufficient to terminate the lease

effective January 1, 1991, and that Drysdale thereupon became a tenant from month-to-month at the increased rental fixed by Barco.

While Drysdale advances a number of arguments in support of his contention that the judgment of the trial court should be reversed, we need discuss only one of the arguments because it is dispositive. Drysdale says all that is involved here is a simple matter of contract construction — the wording of the 1987 lease "is unclear and requires interpretation" in order to carry out the parties' intention that no change was to be made in the substance of the lease provision relating to deemed extensions.*

We agree with Drysdale that the provision in question is unclear. He correctly reads the provision to state, in effect, that "the lease will terminate on December 31, 1989, unless written notice is given three months before December 31, 1989, that the lease will terminate on December 31, 1989," and he aptly characterizes the language of the provision as "meaningless or nonsensical."

We also agree with Drysdale that interpretation is required to give effect to the intention of the parties to the 1987 lease. In similar situations involving construction of contracts, this Court has said:

> The principle that all deeds and contracts in writing shall be construed favorably and as near the apparent intention of the parties as possible, has become a maxim of the law of the highest antiquity. . . .

*Peyton v. Harman,* 63 Va. (22 Gratt.) 643, 646 (1872). The Court also stated:

> [I]f the contract which the parties have made is incurably uncertain, the law will not — or rather, cannot — enforce it. It will only declare such a contract no contract at all, and the parties are then left to the mutual rights and obligations which may then exist between them.
>
> But on the other hand, the law will not pronounce a contract incurably uncertain, and therefore null, because of the omission of words obviously omitted by mistake, and which, if supplied, will make the contract intelligible and operative. Courts of law, as well as courts of equity, may correct an obvious mistake on

---

* Barco makes no response to Drysdale's construction-of-contract argument. Indeed, Barco ignores the argument.

the face of an instrument, and supply words which have been omitted by the parties, and which are manifestly necessary to express their obvious meaning.

*Id.* at 645 (citations omitted).

In *Peyton,* an endorsement on a bond for the payment of money stated: "'It is understood that one twenty-fifth of the principal of this note, and the interest at the expiration of the year, and so on from year to year, the credits not exceeding twenty-five years in all.'" *Id.* at 644. It was contended that the quoted language was unintelligible, rendering the endorsement inoperative. The Court disagreed, saying that it was obvious the words, "'are to be paid', or words of like import, were the words omitted after the word 'interest,'" *id.* at 646-47, and that "[t]he omission being supplied, the construction of the contract as to its meaning and legal effect is plain," *id.* at 647.

And in *Harman v. Howe,* 68 Va. (27 Gratt.) 676 (1876), an injunction bond stated that the sureties were bound in "the just and full sum of seven hundred and seventy-six lawful money of Virginia." *Id.* at 678. The question in the case was what meaning should be given the quoted language. The trial court treated the document as being

a bond for so many *dollars;* upon the ground that the word "dollars," was intended by the parties to be, and ought to have been, inserted in the bond, after the number "seven hundred and seventy-six," but was omitted therein; and that the true and proper legal construction of the bond is, that it is a bond for so many dollars.

*Id.* at 681-82. This Court said the trial court "was right in [its] construction [that the bond is one] in the penal sum of $776." *Id.* at 682. The Court then made this observation:

Nothing is more common than the omission of words, and even most important words, in drawing written instruments; and yet those words can, generally, be as well understood from the context of the instrument as if they were expressed in it, and the instrument is construed accordingly. It would be a great defect in the law if this were not so.

*Id.*

■ *Peyton* was considered upon a demurrer to the initial pleading, so, as the Court observed, the case was decided "without . . . the aid

of evidence *dehors* the instrument." 63 Va. at 645. The same is true of *Harman.* Here, however, no demurrer is involved, extrinsic evidence was admitted below without objection, and the evidence was available to aid the trial court in divining the intention of the parties. That evidence showed without dispute that it was the intention of Professional and Drysdale to repeat in the 1987 lease the 1978 language relating to deemed extensions and that the language was omitted from the 1987 lease as the result of mutual mistake.

■ The trial court, therefore, should have construed the 1987 lease as though it contained the omitted language relating to deemed extensions. Because Professional would have been bound by the lease as so construed had it continued to hold title to the premises in question, Barco, as successor in title to Professional, is similarly bound. *See Hopkins v. Griffin,* 241 Va. 307, 311, 402 S.E.2d 11, 14 (1991).

■ With the lease construed as though it contained the omitted language relating to deemed extensions, the trial court should have held that because Barco failed to give Drysdale notice of termination at least three months prior to December 31, 1990, Drysdale's tenancy extended through the year 1991 at the 1987 rental figure. We will make that holding here and, accordingly, will reverse the judgment of the trial court and enter final judgment in favor of Drysdale.

*Reversed and final judgment.*