**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-1802**

FIRST AMERICAN TITLE INSURANCE COMPANY,

             Plaintiff – Appellee,

      v.

WESTERN SURETY COMPANY,

             Defendant – Appellant,

      and

FIRST ALLIANCE TITLE, INCORPORATED,

             Defendant.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.   Liam O'Grady, District
Judge.  (1:09-cv-00403-LO-IDD)

Argued:  May 12, 2011                    Decided:  August 2, 2011

Before DUNCAN and AGEE, Circuit Judges, and David C. NORTON,
Chief United States District Judge for the District of South
Carolina, sitting by designation.

Unpublished Order of Certification to the Supreme Court of
Virginia.   Judge Agee directed entry of the order with the
concurrences of Judge Duncan and Judge Norton.

**ARGUED**: Richard Thomas Pledger, WALLACEPLEDGER, PLLC, Richmond, Virginia, for Appellant. David H. Cox, JACKSON & CAMPBELL, PC, Washington, D.C., for Appellee. **ON BRIEF**: Thomas J. Moran, Erick F. Seamster, WALLACEPLEDGER, PLLC, Richmond, Virginia, for Appellant. Paul D. Smolinsky, JACKSON & CAMPBELL, PC, Washington, D.C., for Appellee.

---

ORDER

---

AGEE, Circuit Judge:

## I. Questions Certified

The United States Court of Appeals for the Fourth Circuit, exercising the privilege afforded it by the Supreme Court of Virginia through its Rule 5:40 to certify questions of law to the Supreme Court of Virginia when a question of Virginia law is determinative in a pending action and there is no controlling Virginia precedent on point, requests the Supreme Court of Virginia to exercise its discretion to answer the following three questions:

1. Does the Virginia Consumer Real Estate Settlement Protection Act, Va. Code Ann. § 6.1-2.19 et seq. (recodified at Va. Code Ann. § 55-525.16 et. seq.) ("CRESPA")[1] recognize a private cause of action that may be asserted against a surety and the surety bond issued pursuant to Va. Code Ann. § 6.1-2.21(D)(3)

---

[1] At the time of its promulgation in 1997, CRESPA was codified at Va. Code Ann. § 6.1-2.19 et seq. After the entry of final judgment below, CRESPA was amended and recodified at Va. Code Ann. § 5-525.16 et seq. Because the former section numbers were used by the district court in its rulings and the parties in their briefs, we likewise utilize them herein.

2

(recodified at § 55-525.20(B)(3)) by a party other than the State Corporation Commission?

2.    If Question 1 is answered in the negative, does Virginia law nonetheless permit a cause of action against a surety and the surety bond issued pursuant to Va. Code Ann. § 6.1-2.21(D)(3) (recodified at § 55-525.20(B)(3)) by the assertion of a common law claim such as for breach of contract as in this case?

3.    If Questions 1 or 2 are answered in the affirmative, does a title insurance company have standing, either in its own right or as a subrogee of its insured, to maintain a cause of action against a surety and the surety bond issued pursuant to Va. Code Ann.   § 6.1-2.21(D)(3)   (recodified   at   § 55-525.20(B)(3))?

This court acknowledges that the Supreme Court of Virginia may restate any of these questions.   See Va. Sup. Ct. R. 5:40(d).


## II.  Nature of the Controversy and Statement of Relevant Facts[2]

As noted by the United States District Dourt below, "[t]his action arises from a real estate transaction gone awry." (J.A. 793.)   An individual owner of residential real property in Alexandria, Virginia sought to refinance, through SunTrust Mortgage, Incorporated ("SunTrust"), his existing mortgage debt. First American Title Insurance Company ("FATIC") provided title insurance to SunTrust for the refinancing through its title agent, First Alliance Title Company ("First Alliance").   First

---

[2] Additional facts relevant to other issues on appeal, but unrelated to the certified questions, have been omitted.

Alliance also conducted the closing for the refinance transaction.[3] As required by CRESPA, First Alliance obtained a $100,000 surety bond ("the CRESPA Bond") from Western Surety Company ("Western"). The CRESPA Bond binds the surety to pay "any aggrieved person who may be injured by the Principal" and allows "any aggrieved person" to "maintain an action in its own name against this bond." (J.A. 118.)

At settlement, an employee of First Alliance diverted the funds received from SunTrust, which were designated to pay off the existing mortgages on the real property, so that those mortgages were not paid and the deeds of trust securing that indebtedness were not released. This diversion of funds resulted in SunTrust's deed of trust securing the refinance indebtedness being put in position behind the existing deeds of trust in order of priority. Subsequently, the property owner defaulted under the original mortgages, and the mortgagor foreclosed, resulting in the bankruptcy of the property owner. Foreclosure by the existing mortgagor wiped out SunTrust's secured interest in the property, causing a loss of $734,296.09 to SunTrust. FATIC paid the full amount of loss to SunTrust pursuant to the title insurance policy it had underwritten for

---

[3] The parties dispute on appeal whether First Alliance acted as FATIC's agent in First Alliance's role as closing agent. See infra at note 4.

4

the refinance transaction. FATIC then made formal demand upon Western for the $100,000 amount of the CRESPA Bond, which Western has refused to pay, claiming that no private cause of action can be brought against a statutory bond created pursuant to CRESPA.

FATIC instituted this action against Western and First Alliance, in the Circuit Court of Fairfax County, Virginia, and Western removed the action to the United States District Court for the Eastern District of Virginia, asserting diversity jurisdiction under 28 U.S.C. § 1332. In its complaint, FATIC asserted three separate claims for breach of contract, all based on Western's failure to pay FATIC under the CRESPA Bond. In Count I, FATIC brought the cause of action on its own behalf. In Count II, FATIC brought the same breach of contract claim as subrogee of SunTrust, arguing it became subrogated to SunTrust's rights after FATIC made full payment of SunTrust's claim under the title insurance policy. In Count III, FATIC pleaded in the alternative that it was entitled to bring a claim as subrogee of First Alliance, based on a settlement agreement in a separate action. As part of that agreement, First Alliance assigned to FATIC any rights or claim it may have against the CRESPA Bond.

The district court below granted summary judgment in FATIC's favor under Count I. It specifically found that FATIC was an "aggrieved party" under the language of the CRESPA Bond,

5

and that FATIC was entitled to maintain a common law action for breach of contract against the CRESPA Bond. The district court did not reach FATIC's alternative grounds for relief in Counts II and III. The district court thus concluded that Western was obligated to pay FATIC the full amount ($100,000) of the CRESPA Bond. In so doing, it also rejected Western's arguments that:

(1) no private cause of action could be asserted against a CRESPA Bond; and

(2) even if a private cause of action could be brought against a CRESPA Bond, a title insurance company is not the type of party intended to be protected by CRESPA and thus FATIC is not an appropriate party to bring such a claim.[4]

Western timely appealed to this Court. The parties agree that Virginia law applies and controls the resolution of the issues raised.

---

[4] The district court also rejected Western's arguments that: (1) FATIC could not recover because First Alliance was acting as FATIC's agent when it committed the errors giving rise to the CRESPA violation in this case, and a principal cannot recover for the actions of its own agent; and (2) Western's obligations as surety were discharged by FATIC's settlement with First Alliance and with First Alliance's errors and admissions insurance carrier, Steadfast Insurance. If necessary to reach these issues in light of the answers given by the Supreme Court of Virginia to our certified questions, the panel has concluded that it would affirm the district court's rulings as to these issues. Thus, they would not provide alternative grounds for reversal such that we could avoid the questions we have certified. We do not include any analysis or discussion of those issues here, however, because answers to the certified questions may render them moot.

6

III.  Legal Discussion and Relevant Virginia Decisions

CRESPA applies to certain transactions involving the "purchase of or lending on the security of real estate located in this Commonwealth," Va. Code Ann. § 6.1-2.19(c), and requires a non-attorney settlement agent to register and take other steps to comply with the statute.  One such requirement is that an agent must maintain a surety bond of not less than $100,000.[5] Va. Code Ann. § 6.1-2.21(D)(3).  CRESPA also provides for certain penalties, restitution, and other actions to be taken by the licensing authorities against agents who fail to comply with CRESPA's provisions.  See Va. Code Ann. § 6.1-2.27.

A.  Private Cause of Action

The district court opined that under Virginia law, a party could not bring a direct statutory claim for violation of CRESPA, finding that the statute contains no private right of action.  See Vansant & Gusler, Inc. v. Washington, 429 S.E.2d 31, 33 (Va. 1993) ("[When] a statute creates a right and

_____

[5] The applicable statute now requires a $200,000 bond, but at the time of the transaction involved in this case, the statute only required a $100,000 bond amount.  Most settlement agents, including First Alliance here, are also required to maintain an errors or omissions insurance policy with at least $250,000 in coverage, and, if they have employees other than owners and partners, a "blanket fidelity bond or employee dishonesty insurance policy" providing a minimum of $100,000 in coverage.  Va. Code Ann. § 6.1-2.21(D)(1)-(2).  These latter policies and bond are not at issue in this appeal.

7

provides a remedy for the vindication of that right, then that remedy is exclusive unless the statute says otherwise.") (citation omitted and alternation in original). Several circuit courts in Virginia have relied upon this principle to hold that there is no private cause of action created by CRESPA. See, e.g., Koschene v. Hutchinson, 73 Va. Cir. 108, 2007 WL 6013037, at *2 (Va. Cir. Ct. Mar. 16, 2007); Chicago Title Ins. Co. v. Main St. Title & Escrow, LLC, 78 Va. Cir. 68, 2008 WL 8203224, at *2 (Va. Cir. Ct. Dec. 8, 2008), pet. for cert. denied as premature by Chicago Title Ins. Co. v. Main St. Title & Escrow, LLC, No. 09-0466 (Va. July 28, 2009);[6] cf. Stith v. Thorne, 247 F.R.D. 89, 95-96 (E.D. Va. 2007) (citing Va. Code Ann. § 6.1-2.19(B) for the proposition that CRESPA allows remedies for violations to be pursued only by the licensing authorities, not individuals, and concluding that "CRESPA, by its own statutory language, is clear on the issue [of whether a private cause of action is allowed]"). However, another circuit court apparently permitted an action to proceed, although it was unclear whether the basis was a CRESPA statutory right of action, a claim of common law breach of contract, or both. See First Am. Title

_____

[6] In Chicago Title Ins. Co., the circuit court applied this same rule to expressly reject a claim against a CRESPA surety bond. See 2008 WL 8203224, at *1-*2. As noted by Western, this decision is the "only Virginia state court to issue a written opinion precisely on whether CRESPA bonds may be sued upon" by a private party. (Br. of Appellant at 27.)

8

<u>Ins. Co. v. Classic Title & Escrow, Inc.</u>, Case No. CL-2008-7383 (Va. Cir. Ct. Aug. 29, 2008) (Order Overruling Demurrer), at J.A. 130. To date, the Supreme Court of Virginia has not considered the issue of whether a private cause of action is authorized by CRESPA.

In this case, as in <u>Chicago Title Ins. Co.</u>, FATIC characterizes its action not as a direct claim for a violation of CRESPA, but instead as a common law claim for breach of contract premised on the CRESPA Bond. FATIC's cause of action implicates the principle of Virginia law, relied upon by the district court here, that common law rights of action cannot be impliedly abrogated by statute; instead, the General Assembly must manifest its intent to do so. (<u>See</u> J.A. at 185 ("[T]o alter or abrogate the common law policy, the General Assembly must manifest its intent to do so.") (quoting <u>Peoples Sec. Life Ins. Co. v. Arrington</u>, 412 S.E.2d 705, 707 (Va. 1992), and citing to <u>Hyman v. Glover</u>, 348 S.E.2d 269, 271 (Va. 1986)).) Reading CRESPA to contain no abrogation of common law rights, the district court below reasoned that FATIC's breach of contract claim against the CRESPA Bond was thus permitted under Virginia law.

While it would appear that CRESPA contains no abrogation of common law claims, the case at bar does not appear axiomatically resolved. This is so, at least in part, because the pled basis

9

for suit here is FATIC's claim that the CRESPA Bond is an enforceable contract, but that contract is created only as a result of the CRESPA statute.  And Virginia follows the general rule that terms and conditions in a statutory bond that either expand liability from the statute or conflict with the statute are void.  See Aetna Cas. & Sur. Co. v. Earle-Lansdell Co., 129 S.E. 263, 264 (Va. 1925) ("Aetna") (addressing public works bond, but noting "the true rule . . . is to hold the bond void as to any condition imposed beyond what the law required, and good so far as it was in conformity with the act."); Branch v. Richmond Cold Storage, 132 S.E. 848, 850 (Va. 1926) (stating same general rule in context of suspending bonds and appellate bonds).  Thus, if the CRESPA Bond is a statutory bond, there is a tension between the rule reflected in Aetna and the rule that a statute cannot impliedly abrogate common law rights, particularly if CRESPA contains no statutory private cause of action.  How to best reconcile these rules is the basis for our first two certified questions.

A brief discussion of Aetna indicates that it does not directly control this case.  Aetna concerned a contractor's public works bond under which the general contractor obtained the required statutory bond but then failed to pay a subcontractor (the plaintiff) a balance for materials and labor supplied under the contract.  After the general contractor was

10

adjudicated bankrupt, the subcontractor sued the surety based on language in the bond that required the surety to pay claims "for damages, for injury to property, and for labor and material" incurred by the principal as part of the construction contract. 129 S.E. at 264. The surety denied liability, arguing that the language in the bond was void because it expanded the surety's liability beyond that required by the statute, which only provided in general terms that the contractor should faithfully perform the work according to the plans and specifications in the contract.

While acknowledging the general rule that terms in a statutory bond that expand the statute's requirements are void, the Supreme Court of Virginia concluded that a public works bond required a slightly different approach. Id. at 266. According to the Aetna court, a public works bond differed from a statutory bond like a fiduciary bond in that a fiduciary bond involved no "voluntary contracts." Id. Instead, the "rights, duties, and obligations of the principals in such bonds are fixed by law, generally by statute." Id. at 265. By contrast, "contractors' bonds for public works, though required by statutes, must be construed in connection with specific contracts." Id. Therefore, liability under the bond beyond the general parameters of the statute was enforceable because that liability was consistent with the contract contemplated by the

11

statute.  Perhaps more importantly for the analysis in the case at bar, though, the Aetna court also concluded that, because there was a specific statutory provision that authorized the plaintiff to sue upon the bond, the cause of action against the surety was allowed for that independent reason.  Id. at 267.

Aetna thus does not appear dispositive in this case because the statute at issue in Aetna expressly allowed a private cause of action to be brought against the bond. See id. By contrast, CRESPA contains no such direct provision.  Accordingly, no issue arose in Aetna as to whether a private cause of action could be maintained against a bond required by statute because the statute expressly permitted such a proceeding.

Additionally, neither Aetna nor any other Supreme Court of Virginia or Court of Appeals of Virginia decision has determined the proper characterization of a CRESPA surety bond.  That is, whether such a bond is a true "statutory bond" that falls within the general rule set forth in Aetna.  Indeed, the title of the bond itself refers to the statute and a CRESPA Bond is in existence only because CRESPA requires it.  (See J.A. at 774.)[7] On that basis, Western argues that the CRESPA Bond is a

_____

[7]  The CRESPA Bond is titled "Bond for Title Insurance Settlement Agent (Pursuant to Section 6.1-2.21 of the Code of Virginia)."  (J.A. at 774.)  It lists the "Commonwealth of Virginia" as Obligee.  The "whereas" clause likewise references that the Principal is required under CRESPA to maintain a surety bond. (Id.)

12

statutory bond and is subject to the general rule stated in Aetna and Branch. As a consequence, Western contends that the CRESPA Bond attempts to expand liability for CRESPA violations to allow a private cause of action (in the guise of FATIC's common law breach of contract claim) and thus is void as to that provision.

Conversely, FATIC argues first that the CRESPA Bond is not a statutory bond, and thus is not subject to the general rule that a statutory bond must strictly conform to the statute. FATIC posits that, unlike the bonds at issue in Branch and Aetna, CRESPA does not require any particular form or terms to be included in a CRESPA bond.[8] The standard form, published by the State Corporation Commission ("SCC") and used in this case, provides that "any aggrieved person may maintain an action in its own name against this bond to recover damages as a result of the Principal breaching any of the above-mentioned laws." According to FATIC, cases such as Aetna and Branch demonstrate that a statutory bond is not one which is simply required by

---

[8] CRESPA delegates to the State Corporation Commission ("SCC") the authority to issue "subpoenas, rules, regulations, and orders" to effectuate CRESPA. Va. Code Ann. § 6.1-2.25. Consequently, the SCC, through the Bureau of Insurance, has promulgated 14 Va. Admin. Code § 5-395-10(C) (2010) to establish the form CRESPA Bond.

statute, but one for which the statute prescribes the specific terms of the bond.[9]

FATIC also argues that the Commonwealth (through the SCC) promulgated the language of the bond and that it did so pursuant to the language of the statute. It further argues that there is nothing in the CRESPA Bond that is inconsistent with the purposes of CRESPA.[10]

In response, Western stresses that the CRESPA Bond language was promulgated not by the General Assembly, but by an administrative agency. Western challenges whether the SCC exceeded the authority granted by CRESPA in promulgating a bond form that allows a private cause of action. (See Br. of Appellant at 25-26 ("A state agency, acting under statutory authorization, cannot rise higher than the language of the statute giving it power to act by creating common law rights. See Shilling v. Jimenez, 268 Va. 202, 207-08, 597 S.E.2d 206, 209-10 (2004) (political subdivision of the state could not

---

[9] But see Aetna, 129 S.E. at 266 (while discussing differences in types of bonds, noting that both "bonds of fiduciaries . . . and bonds of contractors doing public work" "are required by statute and are therefore statutory").

[10] FATIC also contends, and the district court noted, that refusing to recognize any private cause of action against a CRESPA bond creates a windfall for sureties, since the SCC has confirmed that it had not "pursued any claims on surety bonds issued under CRESPA for the period 1997 through 2009," but as of 2009, no person or entity other than FATIC (in this case) had requested that a licensing authority pursue such a claim. (Cf. J.A. at 155.)

create a third party right of action absent an express grant of power via statute).")).

Against those arguments and legal background, we find no clear controlling Virginia precedent to guide our decision. In short, we are uncertain whether the Supreme Court of Virginia would conclude that CRESPA permits any private cause of action. And even if it does not, whether a common law claim for breach of contract, as in this case, is nonetheless allowable under the terms of the CRESPA Bond. Accordingly, we respectfully request that the first two certified questions be answered.

## B. Standing of Title Insurer

The third certified question arises from Western's argument that, even if there were an implied private cause of action under CRESPA, or a common law action against the CRESPA Bond, FATIC nonetheless lacks standing because it is not an "aggrieved person." CRESPA, by its terms, "applies only to transactions involving the purchase of or lending on the security of real estate . . . ." Va. Code Ann. § 6.1-2.19(C). Based on this language, Western contends that FATIC is not aggrieved under CRESPA because the underlying transaction to which it was a party was for the procurement of title insurance.

Western also makes several policy arguments against allowing title insurance companies, like FATIC, to recover on

15

CRESPA bonds, including that: (1) the statute was not designed to protect title insurers, but only "lender[s], seller[s], purchaser[s] or borrower[s]" (Br. of Appellant at 30-31 (citing Va. Code Ann. § 6.1-2.20)); and (2) that allowing FATIC and other title insurers to recover against CRESPA bonds would provide entities whose very business is to evaluate risk, after recovering from various insurance policies and applicable contracts, to have yet another source of recovery, "leaving those parties for whose protection CRESPA was enacted to scramble for an ever-dwindling remedial source." (Br. of Appellant at 33.) In effect, Western argues that if FATIC has standing, it would make statutory sureties reinsurers and not sureties.

In response, FATIC posits that, under the plain and unambiguous language of the CRESPA Bond, FATIC was an "aggrieved person" entitled to bring a direct claim under the bond. FATIC contends that permitting an "aggrieved person" to recover under the CRESPA bond is consistent with the statute which requires a settlement agent to maintain such a bond as a condition of licensure in order to compensate persons injured by the settlement agent's negligence or misconduct. It contends that the form of the bond is consistent with the purposes of CRESPA, as is allowing recovery against a CRESPA Bond by a title insurer who has paid a claim as a result of a violation of CRESPA.

16

Again, we find no controlling Virginia authority that answers the question of a title insurer's standing to bring a cause of action under CRESPA, or a claim against a CRESPA Bond, if either of those actions are permitted under Virginia law. We therefore respectfully request that, if either of the first two certified questions are answered in the affirmative, that the third certified question also be answered.

### IV. Certified Questions Determine This Proceeding

As required by Va. Supreme Court Rule 5:40, the questions we have certified are determinative of the proceeding here. If either of the first two certified questions, and the third certified question, are answered in the affirmative, then the district court's decision below was correct, and the judgment in favor of FATIC will be affirmed.[11] If, however, the certified questions are answered in the negative, then FATIC is not

---

[11] As indicated _supra_ at note 4, we conclude that the district court's resolution of the remaining issues before us was correct. That is, we agree with the district court that First Alliance was not FATIC's agent for purposes of the settlement and closing, and further agree with the district court that Western was not discharged as a result of FATIC's settlement with either First Alliance or Steadfast Insurance. Accordingly, the case will turn on whether or not FATIC may assert a direct claim under CRESPA or a breach of contract claim against the CRESPA Bond and, if so, whether it has standing to do so.

17

entitled to summary judgment, and the judgment of the district court will be reversed.

V.   The Parties and Their Counsel

A.

The Plaintiff-Appellee is First American Title Insurance Company.   Counsel for the Plaintiff-Appellee is:

David H. Cox, VSB number 19613
     dcox@jackscamp.com
Paul Smolinsky, VSB number 43218
     psmolinsky@jackscamp.com
Jackson & Campbell, PC
Suite 300S
1 Lafayette Centre
1120 20th Street, NW
Washington, DC 20036-3437
(202) 457-1600 (Telephone)
(202) 457-1678 (Facsimile)

B.

The Defendant-Appellant is Western Surety Insurance Company.   Counsel for Defendant-Appellant is:

Richard Thomas Pledger, VSB number 28102
     rpledger@wallacepledger.com
Thomas Joseph Moran, VSB number 71296
     tmoran@wallacepledger.com
Erick Frank Seamster, VSB number 76108
     eseamster@@wallacepledger.com
WallacePledger, PLLC
The  Capstone Center
7100 Forest Avenue, Suite 302
Richmond, VA 23226
(804)282-8300 (Telephone)
(804) 282-2555 (Facsimile)

## VI. Conclusion

Pursuant to the privilege made available by Virginia Supreme Court Rule 5:40, we respectfully:

(1) Certify the questions stated in Part I of this Order of Certification to the Supreme Court of Virginia for resolution;

(2) Order the Clerk of this Court to forward to the Supreme Court of Virginia, under the official seal of this court, a copy of this Order of Certification, together with the original or copies of the record before this court to the extent requested by the Supreme Court of Virginia; and

(3) Order that any request for all or part of the record be fulfilled by the Clerk of this court simply upon notification from the Clerk of the Supreme Court of Virginia.

QUESTIONS CERTIFIED

FOR THE COURT

/s/ G. Steven Agee

19